# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ALEKSANDR KOGAN,

    Plaintiff,

    - against -

FACEBOOK, INC.,
PAUL GREWAL, ALEX STAMOS,
and MARK ZUCKERBERG,

    Defendants.

Index No.:
Date Purchased: Mar. 15, 2019

**SUMMONS**

The basis of venue is the location of Defendant Facebook, Inc.'s principal office and the location where a substantial part of the events giving rise to the claims occurred.

Plaintiff designates New York County as the place of trial.

To the above-named defendants:

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance, on Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the verified complaint.

Dated: New York, NY
       March 15, 2019

                        POLLOCK COHEN LLP

                        By: /s/ *Steve Cohen*

                           Steve Cohen
                           Adam Pollock
                       60 Broad Street, 24th Floor
                       New York, NY 10004
                       (212) 337-5361
                       *Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ALEKSANDR KOGAN,

    Plaintiff,

    - against -

FACEBOOK, INC.,
PAUL GREWAL, ALEX STAMOS,
and MARK ZUCKERBERG,

    Defendants.

Index No.:

**COMPLAINT**

    Plaintiff Aleksandr Kogan, Ph.D., through his undersigned attorneys, brings this action against Facebook, Inc. and several of its highest-ranking current or former officers and employees, namely Paul Grewal, Alex Stamos, and Mark Zuckerberg (the "Individual Defendants"), arising out of their many libelous publications and slanderous statements about Dr. Kogan. Specifically, Defendants have attempted to make Dr. Kogan the unwilling scapegoat for Facebook's several data-privacy scandals. To accomplish this goal, Defendants have impugned Dr. Kogan's honesty, trustworthiness, and academic standing. Dr. Kogan's professional and personal reputation has been damaged as a result.

**THE PARTIES**

    1.    Plaintiff Aleksandr Kogan, Ph.D., is a domiciliary of the State of New York and presently a resident of Erie County. At the time the facts set out below occurred, he resided in New York County.

    2.    Defendant Facebook, Inc. is a foreign corporation authorized to do business in New York with a principal office located in New York County.

3. Defendant Paul Grewal is an individual resident of the State of California and the Vice President and Deputy General Counsel of Defendant Facebook.

4. Defendant Alex Stamos is an individual resident of the State of California and the former Chief Security Officer of Defendant Facebook. At the time the facts set out below occurred, Mr. Stamos was an executive of Defendant Facebook.

5. Defendant Mark Zuckerberg is an individual resident of the State of California, the Chairman and Chief Executive Officer of Defendant Facebook and the controlling shareholder.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over the Defendants under CPLR § 302 as Defendant Facebook has a principal office located in New York County and the causes of action arose in New York County. Additionally, the Individual Defendants directed, controlled, and/or stood to profit from Facebook's New York activities and more specifically from the wrongful actions detailed below. Indeed, the Individual Defendants were the primary actors with respect to the wrongful and defamatory conduct and publications detailed below.

7. Venue is proper in New York County under CPLR § 503 as at least one party resides in this county, the plaintiff designates New York County as the preferred venue, and a substantial part of the events giving rise to the claims occurred in this county.

## NATURE OF THE ACTION

**Facebook's Defamation**

8. In March 2018, *The New York Times* and *The Guardian* published new stories about the Trump campaign's links to Cambridge Analytica.

9. These stories, coupled with the growing concern about Russian involvement in the 2016 presidential campaign – and Facebook's inattention to Russian fake-news feeds – drew unwanted attention to Facebook's business model: monetizing personal user data.

10. Instead of accepting the uncomfortable glare of the spotlight and accepting responsibility for any mistakes it might have made, Facebook went into "PR crisis mode," quickly seizing upon Dr. Kogan as a convenient scapegoat.

11. Facebook's executives proceeded to defame Dr. Kogan:

> "*This was a scam — and a fraud*," Paul Grewal, a vice president and deputy general counsel at [Facebook], said in a statement to The Times earlier on Friday. He added that the company was suspending Cambridge Analytica, Mr. [Christopher] Wylie and the researcher, Aleksandr Kogan, a Russian-American academic, from Facebook.

12. Facebook's executives made knowingly false and defamatory statements about Dr. Kogan and did so in their official capacities as Facebook employees. A partial list of these false, libelous, and defamatory publications follows:

   a. Paul Grewal, Vice President & Deputy General Counsel of Facebook, stated, in a Facebook News release on March 16, 2018 that "Dr. Aleksandr Kogan lied to us."

   b. Mr. Grewal, on March 17, 2018, gave a statement to *The New York Times*, as quoted above: "This was a scam — and a fraud."

   c. On March 16, 2018, Mr. Grewal intentionally and knowingly misstated the purpose of Dr. Kogan's app when he stated in the Facebook News release: "In 2015, we learned that a psychology professor at the University of Cambridge named Dr. Aleksandr Kogan lied to us and violated our Platform Policies … His app, 'thisisyourdigitallife,' offered a personality prediction, and billed itself on Facebook as 'a research app used by psychologists.'"

   d. Alex Stamos, Facebook's Chief Security Officer at the time, tweeted on March 17, 2018: "The researcher in question, Aleksandr Kogan, enticed several hundred thousand individuals to use Facebook to login to his personality quiz in 2014. He lied to those users and he lied to Facebook about what he was using that data for."

  e. On March 21, 2018, Mr. Zuckerberg told CNN: "You can't share data in a way that that people don't know or don't consent to. We immediately banned Kogan's app."

  f. Mr. Zuckerberg wrote, on his own Facebook page, on March 21, 2018: "In 2015, we learned from journalists at The Guardian that Kogan had shared data from his app with Cambridge Analytica. It is against our policies for developers to share data without people's consent, so we immediately banned Kogan's app from our platform."

  g. Mr. Zuckerberg stated, in an interview with Recode, published on March 22, 2018: "Then there's going backwards, which is before 2014, what are all the apps that got access to more data than people would be comfortable with? And which of them were good actors, like legitimate companies, good intent developers, and which one of them were scams, right? Like, what Aleksandr Kogan was doing, basically using the platform to gather a bunch of information, sell it or share it in some sketchy way."

13. These statements, by Facebook employees, were re-broadcast and re-published in America and throughout the world.

14. At the time they made those defamatory statements, Messrs. Grewal, Stamos, and Zuckerberg knew, or should have known, what they were saying about Dr. Kogan was false.

15. Moreover, these false statements were made about a private person who was thrust into the public spotlight by Defendants' defamatory statements.

16. Dr. Kogan's resulting public statements can only be characterized as measured, defensive replies to Defendants' attacks on his character.

17. Aside from Dr. Kogan's attempts to defend his name, Dr. Kogan has not sought to inject himself into, or influence the outcome of, this or any other controversy or issue of public concern.

18. Defendants' defamatory statements caused significant harm to Dr. Kogan's business, trade, and profession.

19. Defendants' defamation thwarted Dr. Kogan's academic career and damaged his business interests and prospects.

## FIRST CAUSE OF ACTION
### Defamation Per Se

20. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

21. As set out above, Defendants published false and defamatory statements of fact about Dr. Kogan.

22. As alleged above, Defendants acted maliciously and intentionally to defame Dr. Kogan as part of its greater scheme to distract and deflect attention away from its own acts, omission, and policies.

23. At the time Defendants made the false statements listed above, they already possessed the information and data sufficient to know the statements were demonstrably false.

24. At a minimum, Defendants knew, or should have known, that the publications, or the gist of the publications, were false when made.

25. Defendants acted with actual malice, recklessness, or negligence.

26. The false and defamatory publications cast doubt on Dr. Kogan's fitness as an academic and researcher and malign his competence and capacity to perform his profession.

27. As such, the publications are defamatory *per se*.

28. Dr. Kogan has suffered, and continues to suffer, damage to his reputation and his professional and community standings, as well as mental anguish and distress as a result of Defendants' false and defamatory publications.

## SECOND CAUSE OF ACTION
### Defamation Per Quod

29. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

30. As set out above, Defendants published false and defamatory statements of fact about Dr. Kogan.

31. The publications, or the gist of the publications, are false.

32. As alleged above, Defendants acted maliciously and intentionally to defame Dr. Kogan as part of its greater scheme to distract and deflect attention away from its own acts, omission, and policies.

33. At the time Defendants made the false statements listed above, they already possessed the information and data sufficient to know the statements were demonstrably false.

34. At a minimum, Defendants knew, or should have known, that the publications, or the gist of the publications, were false when made.

35. Defendants acted with actual malice, recklessness, or negligence.

36. The false and defamatory publications cast doubt on Dr. Kogan's fitness as an academic and researcher and malign his competence and capacity to perform his profession.

37. Dr. Kogan has suffered, and continues to suffer, damage to his reputation and his professional and community standings, as well as mental anguish and distress as a result of Defendants' false and defamatory publications.

38. Dr. Kogan has also suffered substantial monetary damages.

### THIRD CAUSE OF ACTION
### Negligent Hiring and Supervision against Facebook, Inc.

39. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

40. Facebook has a duty to hire, supervise, and train employees, including executive level employees, not to defame and disparage third parties.

41. Facebook repeatedly failed this duty by hiring and failing to train employees who repeatedly defamed Dr. Kogan including in the national and international press.

42. As a result of Facebook's failure to properly hire, supervise, and retain appropriate employees, Dr. Kogan has suffered monetary and non-monetary damages including loss of income, mental distress and anguish, and damage to his reputation and professional standing.

### FOURTH CAUSE OF ACTION
### Respondeat Superior against Facebook, Inc.

43. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

44. As set out above, Facebook employs, or employed, the Individual Defendants who defamed and disparaged Dr. Kogan.

45. As the employer of these individuals, Facebook is responsible and liable for their unlawful acts.

46. As also noted above, Facebook's interests were served by scapegoating Dr. Kogan and diverting attention away from Facebook's own privacy scandals, culpability, and bad acts.

47. Some or all of the Individual Defendants had the authority to conceive, approve, and/or direct Facebook's scapegoating and defaming strategy.

48. As such, each of the Individual Defendants was acting within their general authority and on behalf of Facebook when they defamed and disparaged Dr. Kogan.

49. As a result, Facebook is liable for the damages suffered by Dr. Kogan, which include monetary and non-monetary damages such as mental anguish and distress and damage to his reputation and professional standing.

**WHEREFORE**, Plaintiff demands judgment in his favor and entry of an Order:

(i) awarding Dr. Kogan damages in an amount to be determined at trial, plus pre- and post-judgment interest and an award of punitive damages in an amount to be determined at trial;

(ii) directing Facebook to retract and correct its false and defamatory statements about Dr. Kogan and enjoining Facebook from defaming Dr. Kogan in the future; and

(iii) such other and further relief as the Court may deem just, proper and equitable, including an award of reasonable attorneys' fees and the costs and disbursements of this action.

Dated: New York
March 15, 2019

                    POLLOCK COHEN LLP

                    By:   /s/ *Steve Cohen*

                        Steve Cohen
                        Adam Pollock
                  60 Broad Street, 24th Floor
                  New York, NY 10004
                  (212) 337-5361
                  *Attorneys for Plaintiff*