UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ALEKSANDR KOGAN,

             Plaintiff,

      - against -

FACEBOOK, INC., PAUL GREWAL, ALEX
STAMOS, and MARK ZUCKERBERG,

          Defendants.

--------------------------------------------------------x

Case No. 19-cv-2560 (PAE)

# DEFENDANTS' MEMORANDUM OF LAW IN
## <u>SUPPORT OF THEIR MOTION FOR RULE 11 SANCTIONS</u>

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 3

    I.    Kogan Knew From the Beginning His Claims Were Near Expiration. ........................ 3

    II.    Defendants Explain to Kogan Before He Files This Action That His Claims Are Frivolous. ..................................................................................................... 4

    III.    Kogan Files the Original Complaint Just in Time, But Never Serves Defendants. ........................................................................................................ 5

    IV.    Kogan Files a Frivolous, Time-Barred Amended Complaint. .................................. 7

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ................................................................................................................... 10

    I.    No Objectively Reasonable Attorney Could Have Concluded Kogan's Claims Were Timely. .................................................................................................... 11

        A.    Each of Kogan's Claims Is Unquestionably Subject to a One-Year Limitations Period. ............................................................................... 11

        B.    Filing the Original Complaint Tolled the Limitations Period Only Until June 19, 2019, Rendering Kogan's Claims Clearly Time Barred When He Filed the FAC in October 2019. .................................................... 12

    II.    Kogan's Attempts to Revive His Complaint Demonstrate the Propriety of Sanctions Here. ................................................................................................ 13

        A.    Defendants Did Not Accept Service of the Original Complaint. ................... 13

        B.    Kogan's Invocation of Rule 4(m)'s "Good Cause" Standard to Extend His Service Deadline Is Both Too Little, And Too Late. ............................. 15

        C.    Kogan's Attempt to Invoke the Republication Exception to the Limitations Period By Importing Into the FAC an Irrelevant Statement From 2019 Further Evidences His Bad Faith. ........................................... 19

    III.    This Court Should Impose Monetary Sanctions and Dismiss This Action. .............. 20

CONCLUSION ................................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Abdelhamid v. Altria Grp., Inc.*,
   515 F. Supp. 2d 384 (S.D.N.Y. 2007)......................................................................10

*Alvarez v. Edgecombe Facility*,
   1993 WL 127190 (S.D.N.Y. Apr. 22, 1993)............................................................18

*Am. Commercial Barge Line Co. v. Tug JOAN SALTON*,
   2001 WL 262724 (S.D.N.Y. Mar. 16, 2001) ...............................................15, 16, 18

*Astarita v. Urgo Butts & Co.*,
   1997 WL 317028 (S.D.N.Y. June 10, 1997) ...........................................................13

*ATSI Commc'ns, Inc. v. Shaar Fund*,
   222 F.R.D. 79 (S.D.N.Y. 2004) ........................................................................18, 19

*Berwick v. New World Network Int'l, Ltd.*,
   2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ..........................................................20

*Blau v. Allianz Life Ins. Co. of N. Am.*,
   124 F. Supp. 3d 161 (E.D.N.Y. 2015) .....................................................................6

*Bouchard v. DHL Express (USA), Inc.*,
   716 F. Supp. 2d 202 (D. Conn. 2010)......................................................................14

*Brady v. Lynes*,
   2008 WL 2276518 (S.D.N.Y. June 2, 2008) ...........................................................12

*Cheung Yin Sun v. Mashantucket Pequot Gaming Enter.*,
   663 F. App'x 57 (2d Cir. 2016) ..............................................................................13

*Cioce v. Cty. of Westchester*,
   2003 WL 21750052 (S.D.N.Y. July 28, 2003) .......................................................17

*Dallas v. Roosevelt Union Free Sch. Dist.*,
   644 F. Supp. 2d 287 (E.D.N.Y. 2009) ....................................................................13

*Davis v. Liese*,
   353 F. App'x 95 (10th Cir. 2009) ...........................................................................14

*de la Fuente v. DCI Telecomms., Inc.*,
   259 F. Supp. 2d 250 (S.D.N.Y. 2003).....................................................................8, 9

*E. Refractories Co. v. Forty Eight Insulations, Inc.*,
   187 F.R.D. 503 (S.D.N.Y. 1999) ...........................................................................16

*Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*,
  68 A.D.3d 1658 (4th Dep't 2009) ........................................................................20

*Entm't Partners Grp., Inc. v. Davis*,
  198 A.D.2d 63 (1st Dep't 1993) ...........................................................................11

*Frasca v. United States*,
  921 F.2d 450 (2d Cir. 1990)..........................................................1, 2, 12, 13

*Gay v. Carlson*,
  1991 WL 190584 (S.D.N.Y. Sept. 17, 1991)........................................................6

*Gerena v. Korb*,
  617 F.3d 197 (2d Cir. 2010)........................................................................2, 6, 12

*Gibbs v. Imagimed, LLC*,
  2013 WL 2372265 (S.D.N.Y. May 30, 2013) ......................................................15

*Jimenez v. Madison Area Tech. Coll.*,
  321 F.3d 652 (7th Cir. 2003) ...............................................................................21

*Jonas v. Citibank*, *N.A.*,
  414 F. Supp. 2d 411 (S.D.N.Y. 2006)..................................................................17

*King v. Galluzzo Equip. & Excavating Inc.*,
  223 F.R.D. 94 (E.D.N.Y. 2004) ...........................................................................17

*Koppelman v. Schaller*,
  1988 WL 98781 (S.D.N.Y. Sept. 14, 1988)..........................................................18

*Levy v. Aaron Faber, Inc.*,
  148 F.R.D. 114 (S.D.N.Y. 2003) ................................................................9, 21, 22

*Margo v. Weiss*,
  213 F.3d 55 (2d Cir. 2000)..................................................................9, 10, 19

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
  202 F.3d 315 (D.C. Cir. 2000) .............................................................................21

*McGregor v. United States*,
  933 F.2d 156 (2d Cir. 1991).................................................................12, 13, 16

*McKenzie v. Dow Jones & Co.*,
  355 F. App'x 533 (2d Cir. 2009) ..........................................................................11

*Mintz & Gold LLP v. Daibes*,
  2015 WL 2130935 (S.D.N.Y. May 6, 2015) ...................................................9, 10

*Nat'l Union Fire Ins. Co. v. Sun*,
    1994 WL 463009 (S.D.N.Y. Aug. 25, 1994) ....................................................................16

*O'Malley v. N.Y.C. Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990)...........................................................................................9

*Ocasio v. Fashion Inst. of Tech.*,
    9 F. App'x 66 (2d Cir. 2001) .......................................................................................13

*In re Pennie & Edmonds LLP*,
    323 F.3d 86 (2d Cir. 2003)...........................................................................................9

*Robinson v. Wix Filtration Corp. LLC*,
    599 F.3d 403 (4th Cir. 2010) ......................................................................................17

*Scott v. City of Mount Vernon*,
    2017 WL 1194490 (S.D.N.Y. Mar. 30, 2017) ............................................................12

*Shangold v. Walt Disney Co.*,
    275 F. App'x 72 (2d Cir. 2008) ...........................................................................21, 22

*Spinale v. United States*,
    2005 WL 659150 (S.D.N.Y. Mar. 16, 2005) ............................................................16

*Tuitt v. Long Island R.R. Co.*,
    2012 WL 3241658 (S.D.N.Y. Aug. 10, 2012) ..........................................................14

*Verdon v. Consol. Rail Corp.*,
    828 F. Supp. 1129 (S.D.N.Y. 1993)........................................................................9, 22

*Veritas Capital Mgmt. L.L.C. v. Campbell*,
    22 Misc.3d 1107(A), (Sup. Ct. N.Y. Cty. 2008)..........................................................20

*Voiceone Commc'ns, LLC v. Google, Inc.*,
    2014 WL 10936546 (S.D.N.Y. Mar. 31, 2014) .....................................................9, 20

*West v. Goodyear Tire & Rubber Co.*,
    167 F.3d 776 (2d Cir. 1999).........................................................................................21

**Statutes**

28 U.S.C. § 1448...........................................................................................................6

**Other Authorities**

Alex Hern*, Academic at Centre of Cambridge Analytica Scandal Sues Facebook,*
    *Guardian* (Mar. 18, 2019), https://www.theguardian.com/uk-
    news/2019/mar/18/aleksandr-kogan-cambridge-analytica-scandal-sues-
    facebook. ................................................................................................................1, 6

Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 Million Facebook Profiles Harvested for Cambridge Analytica in Major Data Breach*, Guardian (Mar. 17, 2018), https://bit.ly/2plU1sM..................................................................5

Harry Davies, *Ted Cruz Using Firm that Harvested Data on Millions of Unwitting Facebook Users*, Guardian (Dec. 11, 2015), https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data ........................5

Frank Bajak, *APNewsBreak: Data Scientist Drops Facebook Defamation Suit*, Associated Press (July 2, 2019), https://www.apnews.com/96820dcb80dc469c8d082a07669b5957...........................2, 3, 7, 15

Matthew Rosenberg, *Academic Behind Cambridge Analytica Data Mining Sues Facebook for Defamation*, N.Y. Times (Mar. 15, 2019) .......................................................1, 6

Matthew Rosenberg et al., *How Trump Consultants Exploited the Facebook Data of Millions*, N.Y. Times (Mar. 17, 2018) ...................................................................5

Ime Archibong, *An Update on Our App Investigation and Audit*, Facebook Newsroom (May 14, 2018), https://newsroom.fb.com/news/2018/05/update-on-app-audit/)...................................................................7

Ime Archibong, *An Update on Our App Investigation*, Facebook Newsroom (Aug. 22, 2018), https://newsroom.fb.com/news/2018/08/update-on-app-investigation/...................................................................7

Press Release, FTC, *FTC Sues Cambridge Analytica, Settles with Former CEO and App Developer* (July 24, 2019), https://www.ftc.gov/news-events/press-releases/2019/07/ftc-sues-cambridge-analytica-settles-former-ceo-app-developer...................................................................3

**Rules**

C.P.L.R. 215....................................................................... *passim*

C.P.L.R. 4547......................................................................4

Fed. R. Civ. P. 4 .............................................................. *passim*

Fed. R. Civ. P. 11 ............................................................ *passim*

Fed. R. Civ. P. 12 ...............................................................6, 9, 20

Fed. R. Evid. 408 ...............................................................4

## INTRODUCTION

This is a textbook case for Rule 11 sanctions.  Plaintiff Aleksandr Kogan ("Kogan") and his counsel have filed an amended complaint that is clearly time-barred by the applicable statute of limitations and by operation of Federal Rule of Civil Procedure 4(m).  Kogan has no good faith basis for arguing that his claims are timely, and he has refused to withdraw his time-barred pleading.[1]  The Court should exercise its authority under Rule 11 to impose sanctions, including the dismissal of this action and an award of the costs, expenses, and attorney's fees Defendants have incurred in defending this action, and for any other relief that may be warranted.

Kogan is an academic who operated an application (or "app") on Facebook from November 2013 to December 2015.  He alleges that Defendants Facebook, Inc., Paul Grewal, Alex Stamos, and Mark Zuckerberg (collectively, "Defendants" or "Facebook") defamed him in public statements made between March 16–22, 2018.  He filed his original Complaint in state court on March 15, 2019—just days before the expiration of the one-year statute of limitations applicable to claims for defamation.  *See* C.P.L.R. 215(3).  The filing of the Complaint tolled the remaining few days of the limitations period.  *See Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990).  Kogan used the Complaint as a springboard for making public statements to the media.[2]

Although Kogan and his counsel found time to broadcast the Complaint to the media, they never bothered to serve Defendants with the Complaint.  When Facebook learned about the lawsuit through public media reports, it promptly removed the case to this Court on diversity grounds on March 21, 2019.  A little over one week later, on April 1, 2019, counsel for Facebook called

---

[1]  As required by Rule 11, Defendants served Plaintiff and his counsel with this motion at least 21 days before filing it with the Court, giving them the opportunity to withdraw the challenged pleading.

[2]  *See, e.g.*, Aycock Decl. Ex. A (Matthew Rosenberg, *Academic Behind Cambridge Analytica Data Mining Sues Facebook for Defamation*, N.Y. Times (Mar. 15, 2019), https://www.nytimes.com/2019/03/15/technology/aleksandr-kogan-facebook-cambridge-analytica.html); *see also* Alex Hern, *Academic at Centre of Cambridge Analytica Scandal Sues Facebook*, Guardian (Mar. 18, 2019), https://www.theguardian.com/uk-news/2019/mar/18/aleksandr-kogan-cambridge-analytica-scandal-sues-facebook.

Kogan's counsel, spoke to Kogan's counsel, and offered to waive service pursuant to Rule 4(d). Counsel for Facebook repeated this offer in a follow-up email to Kogan's counsel that same day. Kogan's counsel did not respond to the offer. Nor was the Complaint served. On June 12, 2019, Facebook's counsel again reminded Kogan's counsel that Facebook had not been served. Kogan's counsel did not send waiver papers or otherwise effectuate service.

Under Rule 4(m), Kogan had 90 days from the date of removal—i.e., until June 19, 2019— to serve the Complaint. *See Gerena v. Korb*, 617 F.3d 197, 199–200 (2d Cir. 2010). That deadline passed without Kogan *even attempting* to effectuate service, and on that date, the statute-of-limitations period started running again. *See Frasca*, 921 F.2d at 453. Because Kogan filed the Complaint only days before the statute of limitations expired, his claims soon expired, on or before June 26, 2019. A few weeks later, perhaps recognizing the futility of trying to continue this time-barred action, Kogan publicly announced that he was "dropping [this] defamation lawsuit."[3]

Only he did not. Instead, nearly three months later, on October 12, he apparently had a change of heart. Represented by new counsel, Kogan filed the First Amended Complaint ("FAC"), reasserting the defamation and derivative claims that were in his original Complaint. Kogan's new counsel filed the FAC even though they were well aware that Defendants *still* had not been served with the original Complaint: just days after filing the FAC, Kogan's new counsel sought defense counsel's agreement to accept service. Defense counsel responded in a letter explaining that "the defamation and derivative claims asserted in the FAC are unquestionably time barred," and requested that Kogan "immediately withdraw the FAC." Kogan's new counsel has refused this request and has made clear Kogan's intent to press ahead with the time-barred claims.

---

[3]   *See* Aycock Decl. Ex. B (Frank Bajak, *APNewsBreak: Data Scientist Drops Facebook Defamation Suit*, Associated Press (July 2, 2019), https://www.apnews.com/96820dcb80dc469c8d082a07669b5957).

The claims are not only time-barred; they are baseless for other reasons as well.  For example, Kogan's claims relate to allegedly defamatory statements by Defendants that he "lied" to Facebook and was involved in a "scam."  The truth is that Kogan lied to Facebook by describing his app as "a research app used by psychologists" that would "never [be] used for commercial purposes," when in fact he used the app to collect and sell Facebook user data in violation of Facebook's policies.  As the Federal Trade Commission ("FTC") has alleged in a separate action, Kogan collected Facebook user data "through false and deceptive means."[4]  Kogan himself has publicly admitted that he "regrets" undermining the privacy of Facebook users and monetizing their data for his financial benefit.[5]

There was no good-faith basis for Kogan to bring this suit in the first place—and certainly no good-faith basis to file an FAC months after his claims were time-barred.  The Court should impose Rule 11 sanctions and dismiss this action with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.    Kogan Knew From the Beginning His Claims Were Near Expiration.**

On February 27, 2019, Kogan's previous lawyer, Adam Pollock, sent a letter to Facebook, accusing Facebook of defaming Kogan in statements made in March 2018.  Kogan claimed

---

[4]  Aycock Decl. Ex. C (Compl., In the Matter of Aleksandr Kogan (Nos. 182-3106, 182-3107), https://bit.ly/2OSgXgL (hereinafter FTC Compl.)) ¶ 1.  The FTC accused Kogan of "deceiv[ing] consumers by falsely claiming [he] did not collect any personally identifiable information from Facebook users who were asked to answer survey questions and share some of their Facebook profile data."  Aycock Decl. Ex. D (Press Release, FTC, *FTC Sues Cambridge Analytica, Settles with Former CEO and App Developer* (July 24, 2019), https://www.ftc.gov/news-events/press-releases/2019/07/ftc-sues-cambridge-analytica-settles-former-ceo-app-developer).  As alleged in the FTC's draft complaint, Kogan "obtained the app users' consent to collect their Facebook profile data through *false and deceptive means*" and deployed "deceptive acts and practices to harvest personal information from Facebook users for political and commercial targeted advertising purposes."  Aycock Decl. Ex. C (FTC Compl.) ¶ 1 (emphasis added).  Kogan has not challenged the FTC's charge that he acted deceptively.  In fact, he settled, agreeing that he would be "prohibited from making false or deceptive statements regarding the extent to which [he] collect[s], use[s], share[s], or sell[s] personal information."  Aycock Decl. Ex. D (*FTC Sues Cambridge Analytica, Settles with Former CEO and App Developer*).

[5]  *See, e.g.*, Aycock Decl. Ex. B (*APNewsBreak: Data Scientist Drops Facebook Defamation Suit, supra* note 3) ("Kogan told the AP he now regrets invading so many people's privacy. 'In hindsight it was clearly a really bad idea to do that project.'").

Facebook defamed him by stating, *inter alia*, that Kogan "lied to us," that his conduct "was a scam—and a fraud," and that Kogan "violated" Facebook's policies.  On March 5, 2019, having received the letter, defense counsel sent an email to Pollock, indicating an intention to respond to Kogan's letter on behalf of Facebook no later than Friday, March 15, 2019.  *See* Aycock Decl. Ex. E (3/5/19-3/13/19 email exchange).  That same day, on March 5, Pollock wrote back to defense counsel, requesting that Defendants agree to "a brief tolling period" because "[Kogan's] letter cites statements dating from March 16, 2018 [and] New York has a 1-year statute of limitations for a defamation action and it looks like California is the same."  *Id.*  Defendants did not enter into a tolling agreement with Kogan.

## II.   Defendants Explain to Kogan Before He Files This Action That His Claims Are Frivolous.

On March 13, 2019, defense counsel replied to Pollock's letter.  Counsel noted that Facebook's response to Kogan's threatened lawsuit would be precisely what Facebook has said publicly: that Kogan lied to Facebook and passed Facebook users' data onto political strategists in violation of Facebook's Platform Policies.  *See* Aycock Decl. Ex. F (3/13/19 letter to A. Pollock).[6] The March 13 letter then explained in detail why Kogan's threatened defamation claim was without merit, noting that Kogan had failed to identify any actionable statement that was not either true or non-actionable opinion.

Specifically, the letter described in detail the different ways Kogan had deceived Facebook and its users.  For instance, Kogan had submitted multiple descriptions of his app to Facebook saying that it was for research, or for providing personality information, or other related endeavors, and pledged that his app would "*never* [be] used for commercial purposes."  *Id.*  But in June 2014,

---

[6]  Facebook labeled the March 13 letter as confidential pursuant to relevant settlement privileges.  This letter is admissible here, however, because it is offered by the authoring party not as evidence of the validity of any claim or defense, but rather as a recounting of the parties' correspondence for purposes of this Rule 11 motion and Plaintiff's awareness of Defendants' arguments against his claims.  *See* Fed. R. Evid. 408; N.Y. C.P.L.R. 4547.

unbeknownst to Facebook at the time, Kogan entered into a licensing agreement with Cambridge Analytica's parent company to provide it with data he collected through his Facebook app.  *Id.*  The March 13 letter explained how the media had exposed Kogan's data trafficking in 2015,[7] and that Facebook had subsequently investigated the matter and removed Kogan's app from Facebook's platform for violating its policies.  *Id.*  The letter finally recounted the settlement history of the parties, whereby Kogan had entered into a settlement agreement with Facebook, requiring him to certify that he had deleted all data collected from his app, identify all third parties with which he had shared that data, and assist in obtaining certificates of deletion from those third parties.  *Id.* Two years later, journalists exposed that the data had not been deleted and suggested Kogan had failed to provide a complete list of all third parties with the data in violation of the settlement agreement.[8]  *Id.*  The March 13 letter described this history in detail to make absolutely clear to Kogan that each of the "defamatory" statements he identified were non-actionable.  As Defendants explained, Kogan had lied to Facebook.

### III.   Kogan Files the Original Complaint Just in Time, But Never Serves Defendants.

On March 15, 2019, Kogan filed suit in New York state court asserting defamation and derivative tort claims (negligent hiring and supervision and respondeat superior) against Defendants for March 2018 comments Facebook executives made responding to the Cambridge Analytica events.  *See* Dkt. No. 1-1 (Compl.) ¶¶ 20–49.  Kogan did not serve Defendants, informally notify counsel of the lawsuit, provide a copy of the Complaint, or seek waiver of service that day or in the following days.  Instead, Defendants were alerted to the filing of the Complaint from the news

---

[7]   Aycock Decl. Ex. G (Harry Davies, *Ted Cruz Using Firm that Harvested Data on Millions of Unwitting Facebook Users*, Guardian (Dec. 11, 2015), https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data).

[8]   *See, e.g.*, Aycock Decl. Ex. H (Matthew Rosenberg et al., *How Trump Consultants Exploited the Facebook Data of Millions*, N.Y. Times (Mar. 17, 2018), https://nyti.ms/2HH74vA); *see also* Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 Million Facebook Profiles Harvested for Cambridge Analytica in Major Data Breach*, Guardian (Mar. 17, 2018), https://bit.ly/2plU1sM.

media.[9]  In these media reports, Kogan's lawyer noted that they were not asking for a "specific amount of money," but would "'leave that to a jury,'" and defended his client's sale of Facebook user data.[10]  The filing of Kogan's original Complaint on March 15, 2019 came just one day before the statute of limitations for some of his defamation claims expired, and mere days before the statute of limitations expired on his remaining claims.  *See* C.P.L.R. 215; Compl. ¶¶ 11–12 (pointing to allegedly defamatory statements occurring on March 16, 17, 21, and 22, 2018); *see also* Aycock Decl. Ex. F (3/13/19 letter to A. Pollock).  Although Defendants had not been served, Defendants removed the case to this Court on March 21, 2019.[11]  *See* Dkt. Nos. 1–7.

Days after this action was removed, defense counsel reached out over phone and email to Kogan's then-counsel, Pollock.  During an ensuing conversation between counsel for the parties, defense counsel noted that none of the Defendants had yet been served, but that they were (at that time) willing to execute a waiver of service pursuant to Rule 4(d).  *See* Aycock Decl. ¶ 10.  Defense counsel memorialized this conversation in an email later that day.  *See* Aycock Decl. Ex. I (4/1/19 email to A. Pollock).  Pollock did not respond.  In another discussion with Pollock on June 12, 2019—just days before the 90-day service deadline expired, Fed. R. Civ. P. 4(m)—defense counsel

---

[9]   *See* Aycock Decl. Ex. A (*Academic Behind Cambridge Analytica Data Mining Sues Facebook for Defamation*, *supra* note 2); *Academic at Centre of Cambridge Analytica Scandal Sues Facebook*, *supra* note 2.

[10]  Aycock Decl. Ex. A (*Academic Behind Cambridge Analytica Data Mining Sues Facebook for Defamation*, *supra* note 2).

[11]  Plaintiff has never suggested in *any* conversation with Defendants that their removal to federal court waived service or otherwise obviated the need to properly serve parties or seek execution of a waiver.  And for good reason: pre-service removal does not relieve a plaintiff from his service obligations.  *See Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 183 (E.D.N.Y. 2015) ("Where an action is removed to federal court before the plaintiff accomplishes service of the initial complaint, Federal Rule of Civil Procedure 4 governs service of process." (citing Fed. R. Civ. P. 81(c) (providing that Federal Rules of Civil Procedure apply upon removal))); *see also* 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."); *Gerena*, 617 F.3d at 202 (rejecting argument that defendant waived objections to timely service by removing the action to federal court); *Gay v. Carlson*, 1991 WL 190584, at *5 (S.D.N.Y. Sept. 17, 1991), *aff'd*, 60 F.3d 83 (2d Cir. 1995) ("Courts and commentators agree that merely by removing a case from state to federal court a party does not waive any of its defenses under Rule 12(b), including a motion to dismiss for improper service.").

again reminded Pollock that Defendants had not been served. *See* Aycock Decl. ¶ 12. Pollock

declined to discuss the service deficiency, moving on to ask for Facebook's position on settlement

instead. *Id.* Weeks later, in July 2019, Kogan told the *Associated Press* that he was dropping the

defamation suit against Facebook.[12] Shortly thereafter, this Court scheduled a pretrial conference

but cancelled it on August 14, 2019, observing that Defendants had not been served and providing

notice again to Kogan and his counsel of the service defect in this case. *See* Dkt. No. 11 ("The

Court will issue an order rescheduling the conference if and once Defendants are served . . . .").

**IV.   Kogan Files a Frivolous, Time-Barred Amended Complaint.**

On October 12, 2019, Kogan, represented by new counsel, filed the FAC, regurgitating his

time-barred claims. *See* Dkt. No. 12 (FAC). Kogan also added to the FAC a reference to a

September 2019 Facebook newsroom post—a post updating the public on Facebook's ongoing App

Developer Investigation—which never once mentioned Kogan or his app. *See* Aycock Decl. Ex. J

(9/20/19 post).[13] On October 15, 2019, Kogan's new counsel emailed defense counsel requesting

that Defendants accept service of the FAC—a request that would have been unnecessary if

Defendants had already been served with the original Complaint. *See* Aycock Decl. Ex. M

(10/15/19 email to A. Southwell attaching FAC).

On October 16, Defendants sent Kogan's counsel a letter putting her and Kogan on notice

that the recent filing of the FAC was not made in compliance with Rule 11 because the defamation

---

[12] *See* Aycock Decl. Ex. B (*APNewsBreak: Data Scientist Drops Facebook Defamation Suit*, *supra* note 3).

[13] Facebook has published several similar posts updating the public regarding the App Developer Investigation, including before the filing of the original Complaint. *See* Aycock Decl. Ex. K (Ime Archibong, *An Update on Our App Investigation and Audit*, Facebook Newsroom (May 14, 2018), https://newsroom.fb.com/news/2018/05/update-on-app-audit/); Aycock Decl. Ex. L (Ime Archibong, *An Update on Our App Investigation*, Facebook Newsroom (Aug. 22, 2018), https://newsroom.fb.com/news/2018/08/update-on-app-investigation/). These posts are as much about Kogan as the September 2019 post (that is to say, they are not about him at all). But none of those posts are included in the FAC, presumably because, given their dates of publication, they could not save his time-barred claims. The exclusion of these older posts on the same subject—Facebook's App Developer Investigation— highlights the frivolousness of Plaintiff's attempt to resuscitate his untimely claims by citing the September 2019 post.

and derivative claims asserted in the FAC were unquestionably time-barred (in addition to being meritless).  *See* Aycock Decl. Ex. N (10/16/19 letter to J. Beckage).  On October 21, 2019, Kogan's counsel replied with a short letter, arguing that Defendants' previous *offer* to waive service pursuant to Rule 4(d) in April 2019 had constituted service of the original Complaint.  *See* Aycock Decl. Ex. O (10/21/19 letter to O. Snyder).  Counsel provided no support for this proposition, and further contended that, even if Defendants had *not* accepted service in April 2019, Kogan had "good cause" for his failure to serve because he had apparently been *pro se* and in search of new counsel at some point.  *Id.*  She did not contend that Kogan had been unrepresented when his service deadline expired in June 2019.  *Id.*  This letter came just days after Kogan's counsel sent the October 15, 2019 request that Defendants waive service.

On November 14, 2019 Defendants served this Rule 11 Motion on Kogan's counsel.  *See* Fed. R. Civ. P. 11(c)(2) (providing Rule 11 motion must be served 21 days before filing in court).

## LEGAL STANDARD

Federal Rule of Civil Procedure 11 requires veracity in filing; it "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments.  Rule 11 dictates that, by presenting the court with a pleading, a litigant certifies, among other things: (1) that the pleading is "not being presented for any improper purpose"; (2) that the "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1)–(3); *see, e.g.*, *de la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 256, 259–70 (S.D.N.Y. 2003)

(concluding that plaintiff violated Rule 11(b)(2) by raising frivolous arguments in support of time-barred claims), *aff'd*, 82 F. App'x 723 (2d Cir. 2003).

Sanctions are warranted where a pleading fails to comply with Rule 11 in a manner that is "objectively unreasonable." *See Mintz & Gold LLP v. Daibes*, 2015 WL 2130935, at *10, *13 (S.D.N.Y. May 6, 2015) (Engelmayer, J.) ("[T]he Court may impose sanctions if the offending attorney responsible for the submission is found to have acted with 'objective unreasonableness.'" (quoting *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003)), *aff'd*, 643 F. App'x 35 (2d Cir. 2016). This "objective standard . . . eliminate[s] any 'empty-head pure-heart' justification for patently frivolous arguments," and "deter[s] baseless filings." *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments).

Courts do not hesitate to award sanctions where a plaintiff has brought an "obviously time-barred complaint"—particularly where a "plaintiff craft[s] frivolous arguments to try to get around the time bar." *de la Fuente*, 259 F. Supp. 2d at 261; *see also Voiceone Commc'ns, LLC v. Google, Inc.*, 2014 WL 10936546, at *6, *12–13 (S.D.N.Y. Mar. 31, 2014) (dismissing time-barred claims under Rule 12(b)(6) and imposing Rule 11 sanctions where plaintiff's claims were time-barred and plaintiff had no coherent argument as to why the statutes of limitations were purportedly tolled); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 122–23 (S.D.N.Y. 2003) (sanctioning plaintiff's attorney for bringing clearly time-barred claims, and dismissing the expired claims on summary judgment); *Verdon v. Consol. Rail Corp.*, 828 F. Supp. 1129, 1142 (S.D.N.Y. 1993) (imposing monetary sanctions on plaintiff's attorney when "the briefest search into the applicable statute of limitations would have notified [the attorney] that plaintiff's actions were in fact time-barred" and dismissing untimely claims under Rule 12(b)(6)).

When a court determines Rule 11 has been violated, the court has "broad discretion" to "impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'" *O'Malley v.*

*N.Y.C. Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990); *Margo*, 213 F.3d at 64 (quoting Fed. R. Civ. P. 11(c)(2)).  A court may exercise this discretion to impose several penalties, including the payment of opposing counsel's costs incurred in defending the action.  *See* Fed. R. Civ. P. 11(c)(2) (providing a district court's power to award the prevailing party "reasonable expenses, including attorney's fees"); *see also Mintz & Gold LLP*, 2015 WL 2130935, at *11 ("'Where a district court concludes that a monetary award is appropriate, its broad discretion extends to determining the amount of the award' and 'including an award of attorney's fees . . . .'" (quoting *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 15 (2d Cir. 2010))).  The Court may also dismiss the action entirely in response to a Rule 11 violation.  *See Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 400 (S.D.N.Y. 2007) (dismissing case as a sanction under Rule 11).

## <u>ARGUMENT</u>

The filing of Kogan's FAC reflects his counsel's "objective unreasonableness" and justifies the imposition of sanctions.  Kogan's claims were objectively untimely when the FAC was filed and his arguments to the contrary are frivolous.  Kogan filed the original Complaint on the eve of the expiration of the limitations period—on March 15, 2019.  That filing tolled his limitations period, but after Kogan failed to serve the Complaint on Defendants, the clock started ticking again on June 19.  The limitations period on all his claims expired days later, by June 26—*four months* before Kogan filed the FAC.  The expiration of the limitations period was simple math: no objectively reasonable attorney could consider Kogan's claims anything other than time-barred.  This Court should impose sanctions.

I.      **No Objectively Reasonable Attorney Could Have Concluded Kogan's Claims Were Timely.**

   A.     **Each of Kogan's Claims Is Unquestionably Subject to a One-Year Limitations Period.**

A plaintiff must file a claim for defamation within one year of the allegedly defamatory statement.  *See* C.P.L.R. 215(3).  Kogan has never disputed that a one-year limitations period applies and, in fact, long ago conceded that fact.  As his counsel explained, because Kogan's claims arise from "statements dating from March 16, 2018 [and] New York has a 1-year statute of limitations for a defamation action and it looks like California is the same," Kogan needed to file before March 16, 2019—one year after the first allegedly defamatory statement occurred—for all of his defamation claims to be timely.  *See* Aycock Decl. Ex. E (3/5/19-3/13/19 email exchange).

The three derivative tort claims advanced in the FAC have the same one-year limitations period.  Kogan's negligent hiring and supervision, respondeat superior, and prima facie tort claims are nothing more than "thinly-veiled defamation claim[s]," and as such are governed by the same one-year limitations period as his defamation claims.  *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009).  The "factual allegations underlying" those claims "relate" to "the dissemination of allegedly defamatory materials," and "[i]t is well-settled in New York that a plaintiff cannot save an untimely defamation claim by fashioning the claim under some other rubric, thereby to avail himself of a longer limitations period."  *McKenzie*, 355 F. App'x at 535 (citation omitted); *accord, e.g.*, *Entm't Partners Grp., Inc. v. Davis*, 198 A.D.2d 63, 64 (1st Dep't 1993) ("[I]t is well settled that a plaintiff may not circumvent the one-year statute of limitations applicable to defamation actions (C.P.L.R. 215[3]) by denominating the action as one for intentional interference with economic relations, prima facie tort, or injurious falsehood if, in fact, the claim seeks redress for injury to reputation.") (alteration in original).

Kogan's "claim" for respondeat superior is also subject to a one-year period.  Respondeat superior is not a "substantive cause[] of action" but only an "avenue[] to establish vicarious liability." *Brady v. Lynes*, 2008 WL 2276518, at *5 (S.D.N.Y. June 2, 2008).  Consequently, Plaintiff's "claim" seeking to impose vicarious liability on Facebook for time-barred defamation claims necessarily fails.  *See, e.g.*, *Scott v. City of Mount Vernon*, 2017 WL 1194490, at *28 (S.D.N.Y. Mar. 30, 2017) ("Plaintiffs' state law claims are untimely, and . . . Plaintiffs' claims under a theory of respondeat superior are . . . similarly time barred.") .

> **B.** **Filing the Original Complaint Tolled the Limitations Period Only Until June 19, 2019, Rendering Kogan's Claims Clearly Time Barred When He Filed the FAC in October 2019.**

Although the filing of a complaint tolls the statute of limitations during the 90-day period for service provided by Rule 4(m), "[i]f service is not complete by the end of the [90] days, [] the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to the termination of the statute of limitations period." *Frasca*, 921 F.2d at 453; *see also McGregor v. United States*, 933 F.2d 156, 161 (2d Cir. 1991) ("[T]he filing of a complaint does not toll the applicable statute of limitations beyond the [90]-day period for service provided by Rule 4[m]."), *abrogated on other grounds by Zapata v. City of N.Y.*, 502 F.3d 192 (2d Cir. 2007).

Here, Kogan filed his original Complaint on March 15, 2019—concededly just days before the one-year statute of limitations under New York law expired.  *See* C.P.L.R. 215(3); Aycock Decl. Ex. E (3/5/19-3/13/19 email exchange).  That filing tolled the limitations period.  Once Defendants removed the action to federal court, prior to being served, Kogan had 90 days from the date of removal, or until June 19, 2019, to serve Defendants.  *See Gerena*, 617 F.3d at 200 (explaining that the federal time limit for service under Rule 4(m) begins to run on the date of removal).  Kogan did not do so.  Nor did he seek an extension of time to serve.  After the 90 days had elapsed, the statute of limitations clock started running, and Kogan's claims expired within a few days, by June 26,

2019.  *See Frasca*, 921 F.2d at 453; *McGregor*, 933 F.2d at 161; *see also Ocasio v. Fashion Inst. of Tech.*, 9 F. App'x 66, 68 (2d Cir. 2001) (affirming district court's dismissal of plaintiff's complaint when he failed to serve process within the required time, thus restarting the statute of limitations and making his claims time-barred).  Kogan's claims are unquestionably time-barred.

## II.   Kogan's Attempts to Revive His Complaint Demonstrate the Propriety of Sanctions Here.

### A.   Defendants Did Not Accept Service of the Original Complaint.

Defendants were never served the Complaint in this action—personally or through the execution of a waiver form—and it is objectively unreasonable for an attorney to argue otherwise. Nonetheless, Kogan's counsel says, in her October 21, 2019 letter, that Defendants were properly served the original Complaint when, shortly after it was filed, defense counsel expressed a willingness to execute a waiver.  *See* Aycock Decl. Ex. O (10/21/19 letter to O. Snyder).  That is just wrong.  The law is clear: the only way to effectuate service through a waiver under Rule 4(d) is to file a waiver form executed by the party to be served, which Kogan indisputably did not do.  *See Dallas v. Roosevelt Union Free Sch. Dist.*, 644 F. Supp. 2d 287, 291 (E.D.N.Y. 2009) ("Rule 4(d)(4) provides that when a waiver of service is filed, service is complete 'at the time of *filing* the waiver.'" (emphasis added) (quoting Fed. R. Civ. P. 4(d)(4))); *see also Cheung Yin Sun v. Mashantucket Pequot Gaming Enter.*, 663 F. App'x 57, 58–59 (2d Cir. 2016) (affirming dismissal of plaintiffs' claims for lack of personal jurisdiction where plaintiffs did not contest that defendants were never properly served, and there was no waiver of personal service executed, returned to plaintiffs, or filed with the District Court); *Astarita v. Urgo Butts & Co.*, 1997 WL 317028, at *4 (S.D.N.Y. June 10, 1997) (dismissing complaint where "[e]xamination of the docket reveal[ed] that

no waiver of service was filed" and no proof of service was otherwise made available to the court).[14]
Kogan never even sent defense counsel a waiver form.[15]

Further evidencing their bad faith, Kogan and his counsel—both new and old—have long
been on notice that Defendants were not served with the Complaint, and yet they never claimed that
they effectuated any service at all until after filing the FAC.  Going above and beyond the call of
duty, defense counsel reminded Kogan's prior counsel, Pollock, multiple times that Defendants had
not been served, including once in writing, up until just days before the Rule 4(m) deadline expired.
The Court itself also observed that Defendants had not been served in an August 2019 order.  *See*
Dkt. No. 11.  To the extent Kogan ever believed otherwise, he had ample opportunity to raise this
contention.  And whether through the Court's order, Pollock's case file, or a simple review of the
docket (which lacks any executed waivers or proofs of service), Kogan's new counsel has no
credible basis to think Defendants were served, either.  In fact, Kogan's current counsel has
effectively conceded that Defendants were never served with the Complaint: on October 15, three
days after filing the FAC, Kogan's counsel requested that defense counsel accept service on behalf
of Defendants.  Such a request would have been unnecessary if service of the original Complaint
had already been effectuated, and belies counsel's subsequent assertion in her October 21 letter that
Defendants *were* properly served with the original Complaint.  Kogan and his counsel knew

---

[14]   *See also Davis v. Liese*, 353 F. App'x 95, 98 (10th Cir. 2009) (affirming dismissal of time-barred action where
there was no effective waiver of service under Rule 4(d) because plaintiff failed to file the executed waiver); *Tuitt
v. Long Island R.R. Co.*, 2012 WL 3241658, at *4–5 (S.D.N.Y. Aug. 10, 2012) (citing *Davis* with approval and
recommending that plaintiff's motion to extend time for service be denied); *Bouchard v. DHL Express (USA), Inc.*,
716 F. Supp. 2d 202, 206 (D. Conn. 2010) (noting that "when a request to waive service is used, the complaint is
served for statute of limitations purposes only when the executed waiver is filed with the court, and not, for
example, when the plaintiff mails the request for waiver to defendant"), *vacated on other grounds by* 2012 WL
32953 (D. Conn. Jan. 6, 2012).

[15]   Plaintiff has never suggested that he actually effectuated formal service as described in Rule 4, nor did he file proof
of service with the Court as required.  *See* Fed. R. Civ. P. 4(e) (Serving an Individual Within a Judicial District of
the United States), 4(h) (Serving a Corporation, Partnership, or Association), and 4(*l*) (Proving Service); *see also*
Fed. R. Civ. P. 4, advisory committee's note to 1993 amendments ("The revised rule [4] is clear that, if the waiver
is not returned and filed, the limitations period under [state] law is not tolled and the action will not otherwise
proceed *until formal service of process is effected*.") (emphasis added).

14

Defendants were not served, and their argument to the contrary in an effort to revive Kogan's case is not only "objectively unreasonable," but also bad faith.

**B.    Kogan's Invocation of Rule 4(m)'s "Good Cause" Standard to Extend His Service Deadline Is Both Too Little, And Too Late.**

Kogan argues alternatively that his failure to effectuate service should be excused for "good cause" pursuant to Rule 4(m). *See* Aycock Decl. Ex. O (10/21/19 letter to O. Snyder). Such good cause, he claims, renders his claims timely. But this argument now is too little and too late for three reasons.

*First*, although Rule 4(m) does permit service extensions for "good cause," Kogan never asked for such an extension. Perhaps Kogan never sought an extension of time to serve (and never served) because he intended to dismiss the lawsuit, as he announced to the *Associated Press* in July 2019, a month after his claims expired.[16] In any event, requests for "good cause" extensions cannot be made post-hoc in the abstract. *See* Fed. R. Civ. P. 4(m) ("[I]f the plaintiff shows good cause for the failure [to serve], *the court* must extend the time to serve for an appropriate period.") (emphasis added). As of the service date of this Motion, Kogan has never asked the Court for an extension of time to serve or made any showing of the requisite good cause.

*Second*, the good cause exception in Rule 4(m) does not apply because it only authorizes extension of the service date "for an appropriate period"—not the *months* that have now passed since the expiration of the June Rule 4(m) deadline here. This case does not present a "situation in which service was slightly late"; Kogan did not even bother to seek an extension and "completely disregarded Rule 4(m)." *Am. Commercial Barge Line Co. v. Tug JOAN SALTON*, 2001 WL 262724, at *4 (S.D.N.Y. Mar. 16, 2001); *see also Gibbs v. Imagimed, LLC*, 2013 WL 2372265, at *3 (S.D.N.Y. May 30, 2013) (dismissing claims for failure to timely serve and remarking that

---

[16]   Aycock Decl. Ex. B (*APNewsBreak: Data Scientist Drops Facebook Defamation Suit*, *supra* note 3).

plaintiff's counsel "took no steps to request an extension of time to serve [defendant]," even after it was brought to counsel's attention that defendant had not been served); *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999) ("Generally, when courts consider granting an extension of time [under Rule 4(m)], they are considering motions made by plaintiffs prior to the expiration of the [90]-day period.").

*Third*, even if Kogan had sought an extension for good cause, his reasons for doing so would be objectively unreasonable. A "party seeking a good cause extension bears a heavy burden of proof," particularly given that good cause cannot be "based only on a showing that the plaintiff encountered some unanticipated difficulty." *Spinale v. United States*, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd sub nom. Spinale v. Ball*, 352 F. App'x 599 (2d Cir. 2009). Good cause is available only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *E. Refractories Co.*, 187 F.R.D. at 505 (quoting *Nat'l Union Fire Ins. Co. v. Sun*, 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994)); *see also Am. Commercial Barge Line Co.*, 2001 WL 262724, at *3–5 (concluding that there was no good cause for failure to timely serve when plaintiff never served defendants with the original complaint and only served the amended complaint after the Rule 4(m) time limit had expired). An attorney's inadvertence, neglect, or mistake is insufficient for a finding of good cause. *See Nat'l Union Fire Ins. Co.*, 1994 WL 463009, at *3 (citing *McGregor*, 933 F.2d at 160).

In the October 21 letter, Kogan's counsel asserted that Kogan could show "good cause" for failing to serve on four grounds: (1) Kogan's "unrepresented status," (2) Kogan's "search for and retention of new counsel," (3) "the total lack of prejudice to the defendants," and (4) "the preference of courts to adjudicate matters on the merits." *See* Aycock Decl. Ex. O (10/21/19 letter to O. Snyder). None of these reasons is remotely compelling, nor do they constitute "good cause" under Rule 4(m). It is objectively unreasonable to assert otherwise.

16

"Unrepresented Status." Kogan was not "unrepresented" at any relevant time. Kogan's counsel at Pollock Cohen LLP represented Kogan starting before the filing of the Complaint until well after the Rule 4(m) deadline passed. *See* Aycock Decl. ¶¶ 6–7, 10, 12–13. At no time did Pollock inform defense counsel that he no longer represented Kogan. *See Id.* ¶ 14. In any event, even if Kogan had been unrepresented at some relevant period, that fact alone is not good cause for failure to serve under Rule 4, as even a cursory investigation of the law would reveal. *See Jonas v. Citibank, N.A.*, 414 F. Supp. 2d 411, 415–17 (S.D.N.Y. 2006) (noting that *pro se* status does not excuse failure to comply with Rule 4(m)'s service requirement and dismissing complaint for failure to timely serve); *Cioce v. Cty. of Westchester*, 2003 WL 21750052, at *4 (S.D.N.Y. July 28, 2003) (noting that *pro se* status was insufficient for automatic good cause extension under Rule 4(m)).

"Search for and Retention of New Counsel." There is no objectively reasonable basis in the law to suggest that Kogan's "search for and retention of new counsel" could establish good cause (even if Kogan had moved the Court to extend the service deadline). *See King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 98 (E.D.N.Y. 2004) (reasoning that a party's "inability to hire new counsel does not serve as an excuse for default"); *see also Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 (4th Cir. 2010) (explaining that because "a party voluntarily chooses his attorney as his representative in the action . . . he cannot later 'avoid the consequences of the acts or omissions of this freely selected agent'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962))).

"Lack of Prejudice." Kogan's argument that there would be a "total lack of prejudice to defendants" is likewise an objectively wrong and unreasonable basis to seek to extend his deadline to serve the original Complaint. "Those courts which considered prejudice to defendants did so only after finding that plaintiff had been diligent in attempting to make service," meaning that "any inquiry into prejudice can be made only after a determination that plaintiff's failure to serve process

was not a result of negligence." *Koppelman v. Schaller*, 1988 WL 98781, at *3 (S.D.N.Y. Sept. 14, 1988).  That is, prejudice to defendants is balanced against "the reasonableness and diligence of plaintiff's efforts to serve process." *Alvarez v. Edgecombe Facility*, 1993 WL 127190, at *2 (S.D.N.Y. Apr. 22, 1993).  Here, there is no "reasonableness [or] diligence of plaintiff's efforts" to balance, because Kogan made no effort to serve at all.  In fact, *Defendants* made more of an effort to negotiate service and/or a waiver than Kogan did, demonstrating both Defendants' good-faith conduct and Kogan's dilatoriness.  Likewise, the prejudice that would ensue to Defendants from an extension of Kogan's service deadline is substantial and manifest: Defendants would be forced to spend time, money, and other resources defending meritless claims that are clearly time-barred, that Kogan expressed an intention to dismiss, and that Kogan made zero effort to serve.  *See Zapata*, 502 F.3d at 197 (finding prejudice to defendant who would "be[] forced to defend a time-barred action" and affirming Rule 4(m) dismissal for failure to serve process).

> "Preference for Merits Adjudication."  Kogan's appeal to "the preference of courts to adjudicate matters on the merits" is also objectively unreasonable.  Although courts have a preference for deciding cases on the merits, they also have a preference for parties who are "conscientious about complying with [Rule 4(m)]." *Am. Commercial Barge Line Co.*, 2001 WL 2662724, at *3.  This preference for reaching the merits "does not dictate . . . that every case that [otherwise] may be time-barred will be given an extension." *ATSI Commc'ns, Inc. v. Shaar Fund*, 222 F.R.D. 79, 81 (S.D.N.Y. 2004) (alteration in original) (quoting *Am. Commercial Barge Line Co.*, 2001 WL 2662724, at *3).

Despite multiple reminders from defense counsel and the Court that Defendants had not been served, Kogan never attempted service of the original Complaint, never requested an extension of time for service, and never explained his failure to serve the original Complaint to Defendants or this Court.  This is a far cry from conscientiously complying with Rule 4.  "[I]f the Rules are to

mean anything, parties must diligently try to follow them and courts must enforce them, even if that means that cases must sometimes be finally determined on procedural grounds rather than on substantive merits." *ATSI Commc'ns, Inc.*, 222 F.R.D. at 81 (alteration in original) (citation omitted).  It is objectively unreasonable to assert that Kogan can so flagrantly disregard the rules, and then have his case decided on the merits anyway.

### C.   Kogan's Attempt to Invoke the Republication Exception to the Limitations Period By Importing Into the FAC an Irrelevant Statement From 2019 Further Evidences His Bad Faith.

Kogan's last-ditch effort to revitalize his claims is frivolous and in bad faith.  The FAC adds to its allegations a September 2019 Facebook newsroom post, FAC ¶¶ 136–44; Kogan has contended that this post constitutes "republication" of the allegedly defamatory statements thereby "re-triggering the statute of limitations for defamation."  Aycock Decl. Ex. O (10/21/19 letter to O. Snyder).  That position is just the type of objectively unreasonable, "'empty-head pure-heart' justification for patently frivolous arguments" that Rule 11 is meant to eliminate.  *See Margo*, 213 F.3d at 64 (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments).  It both shows Kogan's understanding that his claims were time-barred and his and his counsel's conscious effort to circumvent the limitations period.

The September 20, 2019 newsroom post is by Facebook Vice President of Product Partnerships, Ime Archibong, and is titled "An Update on Our App Developer Investigation."  *See* Aycock Decl. Ex. J (9/20/19 post).[17]  It is not defamatory and no reasonable attorney could suggest otherwise.  For his part, Kogan contends that the September 2019 post is somehow defamatory because it "suggests a criminal-like 'investigation' into the actions of one single developer: Dr. Kogan."  But the post describes an ongoing investigation that "has addressed millions of apps,"

---

[17]   Notably, the FAC also mis-dates the post, FAC ¶ 137, suggesting again that Plaintiff and his counsel failed to conduct a reasonable inquiry into the underlying facts here.

"tens of thousands of which have been suspended." *Id.* It explains that "the apps that have been suspended are associated with about 400 developers." *Id.* And it describes actions Facebook has taken against an app called "myPersonality," a developer called "Rankwave," and two companies called "LionMobi" and "JediMobi." *Id.* Kogan and his app *are not mentioned anywhere*. The post is simply not about him. Nor is there any way to construe the factual information in the post as defamatory by implication.

Invocation of this 2019 post is a bad faith Hail Mary—the very type of hopelessly feeble attempt to save untimely defamation claims that warrants sanctions. *See Berwick v. New World Network Int'l, Ltd.*, 2007 WL 949767, at *13 n.10 (S.D.N.Y. Mar. 28, 2007) ("[B]ecause the alleged statement does not mention the plaintiffs at all, the pleadings [] fail to meet the independent requirement that a statement must be 'of and concerning the plaintiff[s]' to support a defamation claim.") (alteration in original); *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*, 68 A.D.3d 1658, 1661–62 (4th Dep't 2009) (dismissing defamation cause of action for failure to state a claim where the materials containing alleged defamatory statements did not name the plaintiff); *Veritas Capital Mgmt. L.L.C. v. Campbell*, 22 Misc.3d 1107(A), at *13 (Sup. Ct. N.Y. Cty. 2008) (concluding that statements that "d[id] not refer to plaintiffs" were "not sufficiently of and concerning plaintiffs" to constitute defamation ).[18]

### III.   This Court Should Impose Monetary Sanctions and Dismiss This Action.

Courts in the Second Circuit regularly impose sanctions when a plaintiff brings unquestionably time-barred claims. *See, e.g.*, *Voiceone Commc'ns, LLC*, 2014 WL 10936546, at *6, *12 (dismissing time-barred claims under Rule 12(b)(6) and granting motion for Rule 11 sanctions where plaintiff had no coherent argument as to why the statutes of limitations were

---

[18]   Defendants' motion to dismiss will further describe why these claims are unsupportable on their face as a matter of law.

purportedly tolled); *Levy*, 148 F.R.D. at 122–23 (awarding attorney's fees and expenses where plaintiff's attorney brought clearly time-barred claims and dismissing the expired claims on summary judgment). This Court should sanction Kogan and his counsel consistent with Rule 11, including by dismissing this action with prejudice and awarding monetary sanctions. Both of these sanctions serve Rule 11's purposes—punishing past misconduct that wastes judicial and party resources and deterring similar conduct from occurring in the future.

In the Second Circuit, district courts have discretion to dismiss all or part of an action as a sanction for misconduct under Rule 11 where "there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 74 (2d Cir. 2008) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Courts in other circuits agree that a district court may dismiss an action under Rule 11 when "reasonably necessary to deter repetition of the offending conduct." *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (affirming dismissal of claims with prejudice based on fraudulent allegations in violation of Rule 11); *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325–26 (D.C. Cir. 2000) (affirming Rule 11 dismissal of counterclaims, including defamation counterclaim, in part because they were "legally deficient").

Dismissal is plainly warranted here. Kogan and his counsel are well aware that his claims are time-barred. *See* Aycock Decl. Ex. E (3/5/19-3/13/19 email exchange). After Kogan and his former counsel willfully violated Rule 4 by failing to serve Defendants within the 90-day deadline, Kogan's new counsel seeks to resuscitate his claims with bad faith arguments that no objectively reasonable attorney would advance. For one, Kogan has concocted a defamation claim arising out of a 2019 statement that no reasonable person could construe as defamatory. And for another, Kogan has asserted that his failure to serve was excused by "good cause" despite receiving numerous reminders from Defendants and this Court that Defendants had not yet been served.

21

These actions are in bad faith, justifying dismissal—an effective means of deterring Kogan's counsel and others from wasting both judicial and Defendants' time and resources. Particularly in this case—where the misconduct itself is about bringing plainly barred claims to begin with—dismissal is a sanction that is reasonable and appropriate to achieve the purposes of Rule 11.

This Court should award attorney's fees as well, particularly because Defendants went above and beyond to alert Kogan and his counsel that they had not been served. The sanction of attorney's fees and costs is appropriate where, as is the case here, the plaintiff's "willfulness and bad faith . . . resulted in significant costs to the defendants." *Shangold*, 275 F. App'x at 74 (affirming sanction of dismissal and award of attorneys' fees); *see also Levy*, 148 F.R.D. at 123 (granting Rule 11 motion and awarding attorney's fees where a reasonable inquiry into the law would have revealed that plaintiff's claims were time-barred); *Verdon*, 828 F. Supp. at 1141–42 (ordering plaintiff's counsel to pay each defendant's costs where his failure to conduct even "[t]he briefest search into the applicable statutes of limitations" before bringing time-barred claims "wasted a great deal of [the court's] time and that of the defendants"). Here, the frivolous FAC has forced Defendants to expend significant costs, including through researching, developing strategy, drafting correspondence with Kogan's counsel, preparing a motion for sanctions, and preparing a motion to dismiss time-barred claims. Had Kogan not filed his meritless FAC, Defendants would not have incurred any of these expenses. The Court can, and should, exercise its broad discretion to compensate Defendants for the cost of defending against claims that an objectively reasonable attorney who abided by Rule 11 never would have brought.

## CONCLUSION

Neither Kogan nor Kogan's counsel has any objectively reasonable basis to believe that Kogan's claims are timely. For the above-mentioned reasons, Defendants respectfully request that this Court impose Rule 11 sanctions, including the dismissal of this action and for the costs,

expenses, and attorney's fees Defendants have incurred in defending this action, and for any other relief that may be warranted.

Dated: New York, New York
November 14, 2019

          GIBSON, DUNN & CRUTCHER LLP


          By:   /s/ Orin Snyder
               Orin Snyder
               Alexander H. Southwell
               Joshua S. Lipshutz (*pro hac vice*)
               Amanda M. Aycock
               Lee R. Crain

          200 Park Avenue, 47th Floor
          New York, New York 10166-0193
          Tel.: (212) 351-4000
          Fax: (212) 351-4035
          osnyder@gibsondunn.com
          asouthwell@gibsondunn.com
          jlipshutz@gibsondunn.com
          aaycock@gibsondunn.com
          lcrain@gibsondunn.com

          *Attorneys for Defendants*