USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/3/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                          :
ALEKSANDR KOGAN,                                          :
                                                          :            19 Civ. 2560 (PAE)
                                        Plaintiff,        :
                                                          :            OPINION & ORDER
              -v-                                         :
                                                          :
FACEBOOK, INC.; PAUL GREWAL; ALEX STAMOS;   :
and MARK ZUCKERBERG,                                     :
                                                          :
                                        Defendants.      :
                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On March 15, 2019, plaintiff Aleksandr Kogan filed suit in state court, alleging that

defendants—Facebook, Inc., and three of its executives—defamed him.  Defendants removed the

case to this Court.  Defendants now move to dismiss Kogan's Complaint, on the ground that

Kogan failed to timely serve it.

For the reasons that follow, the Court grants the motion and dismisses the Complaint.

I.      **Background**

On March 15, 2019, Kogan, through counsel, filed a summons and Complaint in New

York State Supreme Court.  Kogan alleged that Facebook, Inc. ("Facebook"), and executives

Paul Grewal, Alex Stamos, and Mark Zuckerberg had defamed him.  Dkt. 1-1 ("Compl.").

Kogan is a data scientist who developed the app that enabled the firm Cambridge Analytica to

collect personal details regarding some 80 million Facebook users.  His claims arose from public

statements that Facebook made in March 2018 in connection with its suspension of Kogan and

Cambridge Analytica from Facebook.  *See id.* ¶¶ 8–13.  Kogan's claims were against all

defendants for defamation *per se* and defamation *per quod*, and against Facebook for the derivative torts of negligent hiring, supervision, and respondeat superior. *See id.* ¶¶ 20–49. Kogan sought money damages and declaratory relief. *Id.* at 9.

On March 21, 2019, defendants timely removed the case to this Court, based on diversity jurisdiction.[1] Dkt. 1. On March 22, 2019, defendants filed a notice on the docket of this case reflecting their service on Kogan's counsel, Pollock Cohen LLP ("Pollock Cohen"), of, *inter alia*, the notice of removal and defense counsels' notices of appearance. Dkt. 9.

On August 8, 2019, with no further activity in the case reflected on the docket, the Court issued an order scheduling an initial pretrial conference for October 4, 2019, and directing counsel, *inter alia*, to submit, in advance of that conference, a joint case-management plan. Dkt. 10. On August 14, 2019, the Court, alerted that defendants had not been served, issued an order adjourning the initial conference, and stating that a conference would be scheduled "if and once Defendants are served." Dkt. 11.

On October 12, 2019, a new counsel, Jennifer Anne Beckage, Esq., of Beckage PLLC, filed a notice of appearance, Dkt. 13, and, on Kogan's behalf, filed a First Amended Complaint in this Court, Dkt. 12 ("FAC"). The FAC amplified on Kogan's factual allegations, and added a fifth claim, brought against all defendants, for prima facie tort. *See generally id.* On October 22, 2019, Myriah Jaworski, Esq., also of Beckage PLLC, filed a notice of appearance. Dkt. 16.

On November 26, 2019, the Court, recognizing that Kogan had not filed an affidavit of service on defendants of either the Complaint or the FAC, issued an order to show cause. Dkt. 17 ("OTSC"). The order stated:

---

[1] Defendants alleged that Kogan is a citizen of New York and that defendants are citizens of California, Dkt. 1 ¶¶ 5–8, and that the amount in controversy exceeds $75,000, *id.* ¶ 9.

Plaintiff has yet to file an affidavit of service indicating that defendants have been served with the complaint. Rule 4(m) of the Federal Rules of Civil Procedure requires that a defendant be served with the summons and complaint within 90 days after the complaint is filed. In a case that is removed from state court, this 90-day clock begins to run on the date of removal. *See Reid ex. rel. Roz B. v. Freeport Pub. Sch. Dist.*, 89 F. Supp. 3d 450, 456 (E.D.N.Y. 2015). Here, plaintiff had 90 days from March 21, 2019 to serve the summons and complaint.

It is hereby ORDERED that the plaintiff advise the Court in writing why plaintiff failed to serve the summons and complaint within the 90-day period, or, if plaintiff believes that the defendants have been served, when and in what manner such service was made. It is further ORDERED that if the Court does not receive any written communication from plaintiff by December 10, 2019, showing good cause why such service was not made within that time period, the Court will dismiss the claims against defendants, without prejudice.

*Id.* at 1–2.

On December 2, 2019, Kogan filed a notice of motion for leave to file a waiver of service form, or, in the alternative, an extension of time in which to serve the original Complaint. Dkt. 18. Along with the notice of motion, Kogan filed an affidavit from Kogan himself, Dkt. 19 ("Kogan Aff."), a declaration from his counsel, Dkt. 20 ("Beckage Decl."), and a memorandum of law, Dkt. 21 ("Kogan Mem."), with an attached proposed order granting Kogan's motion, Dkt. 21-1. Kogan asserted that defendants, through counsel, had agreed to waive service of the Complaint, although Kogan had never executed or filed a waiver form. *See* Kogan Mem. at 8–11. Kogan alternatively argued that good cause existed for the Court to extend Kogan's time to serve the original Complaint and that, even if good cause did not exist, the Court should issue a discretionary extension to allow Kogan to serve the original Complaint. *See id.* at 12–21.

On December 5, 2019, defendants filed a motion for Rule 11 sanctions, costs, and dismissal with prejudice, on the grounds, *inter alia*, that Kogan's FAC was clearly time-barred and legally baseless. Dkt. 22. Along with the motion, defendants filed a memorandum of law, Dkt. 23, and a declaration of counsel, Dkt. 24 ("Aycock Decl."), containing attachments, including correspondence among Kogan's and defendants' counsel with respect to a waiver of

3

service.  Defendants also submitted a cover letter, noting that these materials had been furnished to Kogan's counsel 21 days earlier, and that defendants' motion for sanctions had been filed the first day available under the safe-harbor provisions of Rule 11.  Dkt. 25.

On December 6, 2019, the Court issued an order, noting defendants' Rule 11 filing. Dkt. 26.  The Court notified counsel that its intention was first to resolve Kogan's motion for leave to file a waiver of service and to determine whether to dismiss the case for failure to timely serve defendants or file a waiver of service.  *Id.*  The Court set a briefing schedule for opposition to Kogan's motion.  *Id.*

On December 16, 2019, consistent with that schedule, defendants filed a memorandum of law in opposition to Kogan's motion for either leave to file a waiver of service form or for an extension of time to serve his original Complaint.  Dkt. 27 ("Facebook Mem.").  On December 23, 2019, Kogan filed a reply affidavit in further support of his motion, Dkt. 28 ("Kogan Reply Aff."), and a reply memorandum of law, Dkt. 28-1 ("Kogan Reply").

On January 8, 2020, Kogan filed a letter to notify the Court—"[i]n an abundance of caution, in the event the Court denies [Kogan's] pending motion in its entirety, and does not allow for any extension of time to serve the Original Complaint"—of the steps he had taken to serve the FAC on defendants.  Dkt. 29 (attaching exhibits).  On January 10, 2020, after the Court acknowledged receipt of this letter, Dkt. 30, defendants submitted a letter correcting inaccuracies in Kogan's January 8, 2020 letter, Dkt. 31.  On January 13, 2020, the Court endorsed defendants' letter, notifying counsel that it intended first to address the pending motion relating to the initial Complaint before turning, if necessary, to service of the FAC.  Dkt. 32.

## II.    Discussion

Federal Rule of Civil Procedure 4(m) sets a 90-day deadline for service of a complaint in federal court.  It states:

(m) Time Limit for Service.  If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m).

Defendants here removed this case on March 21, 2019.  Kogan's Rule 4(m) deadline to serve the Complaint was June 19, 2019.  It is undisputed that Kogan did not serve the Complaint on defendants by that date or, in fact, at any point thereafter.

Kogan instead makes three arguments to salvage his original Complaint.

**A.    Waiver of Service**

Kogan first argues that defendants agreed to waive service, obviating his service obligation under Rule 4(m).  *See* Kogan Mem. at 8–10.  Waivers of service are governed by Rule 4(d), which provides:

(d) Waiving Service.

(1) *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:

(A) be in writing and be addressed:

(i) to the individual defendant; or

(ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

(B) name the court where the complaint was filed;

(C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

(D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

(G) be sent by first-class mail or other reliable means.

(2) *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

(A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

(3) *Time to Answer After a Waiver.* A defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent—or until 90 days after it was sent to the defendant outside any judicial district of the United States.

(4) *Results of Filing a Waiver.* When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.

Fed. R. Civ. P. 4(d).[2]

---

[2] Under Rule 4(d), a defendant who waives service does not waive any objection to personal jurisdiction or venue.  Fed. R. Civ. P. 4(d)(5).

The record here does not reflect compliance with Rule 4(d).[3]  Kogan has not come forward with any evidence that he ever requested a waiver of service with respect to the original Complaint, under Rule 4(d)(1) or otherwise.  Nor has any written waiver of service been filed on the docket of this case or provided to the Court in connection with the present motion.

On the contrary, the undisputed record reflects that defendants informally communicated to Kogan's counsel their willingness to waive service, but that Kogan did not take them on up that offer.  On April 1, 2019, 11 days after removal, defendants' counsel telephoned Kogan's lawyer, Adam Pollock, Esq., and explained that none of the defendants had been served, but that they were, at that time, willing to execute a waiver of service pursuant to Rule 4(d).  *See* Aycock Decl. ¶ 10.  Defendants' counsel memorialized this conversation in an email later that day.  *See id.* ¶ 11 & Ex. I ("Apr. 1, 2019 Email").  The email reiterated:  "Defendants . . . are willing to waive service . . . under Rule 4(d).  Please confirm that you will agree to this manner of service and we can execute a waiver of service."  Apr. 1, 2019 Email at 2.  Pollock never responded, Aycock Decl. ¶ 11, and Kogan has not proffered any contrary evidence.

Defendants' counsel reasonably understood Pollock to be Kogan's counsel.  Pollock and his firm, Pollock Cohen, had filed the Complaint on March 15, 2019, in New York State

---

[3] Removal of a case does not waive or obviate the need for service, and Kogan does not so argue. *See, e.g.*, *Gerena v. Korb*, 617 F.3d 197, 202 (2d Cir. 2010) (removal did not waive defendant's objections of insufficient service); *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) ("Removal does not waive any Rule 12(b) defenses."); *G.G.G. Pizza, Inc. v. Domino's Pizza, Inc.*, 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999) ("Rule 4(m) applies to removed cases after the date of removal. . . .  Moreover, Rule 4(m)'s [90]-day period for service begins to run on the date of removal." (internal quotation marks and citations omitted)); *see also* 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."); Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").

Supreme Court, *see* Compl., and defendants' notice of removal had been served on Pollock's firm, *see* Dkt. 9.  And, before the Complaint had been filed in state court, Pollock had engaged in a series of communications with counsel for Facebook about a potential lawsuit by Kogan.  On February 27, 2019, Pollock had sent a letter to Facebook that threatened a defamation suit based on Facebook's statements about Kogan in March 2018.  *See* Aycock Decl., Ex. E ("March 2019 Emails") at 3; *id.*, Ex. F ("Mar. 13, 2019 Letter") at 2.  On March 5, 2019, defendants' counsel had emailed Pollock and stated that "we will be sending a response to your letter . . . no later than next Friday," *i.e.*, by March 15, 2019.  March 2019 Emails at 3.  Later on March 5, 2019, Pollock had emailed back and requested that defendants agree to "a brief tolling period" because Kogan's defamation claim rested on "statements dating from March 16, 2018," and "New York has a 1-year statute of limitations for a defamation action and it looks like California is the same."  *Id*. at 2–3.  Defendants did not agree to the tolling period.  Pollock's firm, after filing the Complaint, had also publicized it to the media, which alerted defendants to its filing.  *See, e.g.*, Aycock Decl., Ex. A (*New York Times* article dated March 15, 2019, reporting on Kogan's lawsuit and quoting Pollock Cohen partner Steve Cohen) ("*N.Y. Times* Article").[4]

On June 12, 2019, a week before the service deadline, defendants' counsel again called Pollock and reminded him that defendants had not been served.  *See* Aycock Decl. ¶ 12.  Pollock did not discuss service in that conversation.  *See id.*  He instead asked for Facebook's position on

---

[4] Kogan objects to defendants' citation of newspaper articles and other media sources, arguing that such articles "are not admissible to prove the truth of the matter asserted therein" and thus should be disregarded.  Kogan Reply at 2 (citation omitted).  Regardless of whether such articles would be admissible at trial, the Court is not considering them for the truth of the matter asserted, but for other purposes—here, for example, to show that Kogan had publicized his suit, and that, as a result, defendants had notice of such suit.

settlement. *Id.* On June 19, 2019, the service deadline passed without Kogan's having accepted, or responded to, defendants' offer to waive service.[5]

Under these circumstances, Kogan cannot claim a waiver of service. Kogan states hazily that defendants "agreed" to waive service. *See* Kogan Mem. at 1, 4, 8–11. But to the extent that Kogan intends to convey that a waiver of service was agreed to, that statement is factually wrong. While defendants stated that they were willing to waive service under Rule 4(d), defendants' email made clear no waiver had occurred, in that defendants there expressly asked Kogan to confirm that he was amenable to this form of service. *See* Apr. 1, 2019 Email at 2. Kogan never did so. *See* Aycock Decl. ¶ 11. And, despite defendants' later reminder of their offer to waive—which communicated clearly that there had not yet been a waiver—Kogan never followed up, confirmed, sent waiver papers, or even responded to defendants. *See id.* ¶ 12. Defendants' unaccepted offer was not an agreement to waive. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (offer without acceptance is not an agreement); *see also Detroit Copper & Brass Rolling Mills v. Wise*, 297 F. 460, 460 (2d Cir. 1924) (per curiam) ("Every agreement is the result of an offer and an acceptance thereof.").

In any event, even if an informal agreement on a service waiver had been reached—and the record does not support this—service by waiver was not effectuated, because Kogan did not comply with Rule 4(d)'s requirements for such a waiver. Rule 4(d) required Kogan to request a waiver of service from defendants, obtain defendants' written agreement on a waiver of service form, and then file the executed form. *See* Fed. R. Civ. P. 4(d). Kogan did not attend to any of

---

[5] On July 2, 2019, the Associated Press ran an article reporting that Kogan said he was dropping his lawsuit against Facebook. Aycock Decl. ¶ 3; *id.*, Ex. B at 1. Kogan disputes that he told the reporter that he was "dropping" the suit; he states that he instead indicated that he "did not at the time see how [he] could continue given [his] circumstances and who Defendants are." Kogan Reply Aff. ¶ 15.

these formalities.  His failure to do so requires dismissal of his Complaint.  *See, e.g.*, *Cheung Yin Sun v. Mashantucket Pequot Gaming Enter.*, 663 F. App'x 57, 58 (2d Cir. 2016) (dismissing complaint where defendants were not properly served, waiver of service form was never returned to plaintiffs, and form was never filed with court); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 595 (E.D.N.Y. 2013) (dismissing complaint where plaintiff failed to request waiver of service); *Am. Int'l Grp. Eur. S.A. (It.) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 374 (S.D.N.Y. 2010) (dismissing defendant's third-party complaint where no executed waivers of service were ever filed with court); *Astarita v. Urgo Butts & Co.*, No. 96 Civ. 6991 (PKL), 1997 WL 317028, at *4 (S.D.N.Y. June 10, 1997) (dismissing complaint where no waiver of service was filed); *cf. Ortiz v. County of Westchester*, No. 94 Civ. 1685 (LMM), 1994 WL 419815, at *2 (S.D.N.Y. Aug. 10, 1994) (declining to dismiss complaint where waiver of service was returned and filed with court).

Kogan, finally, asks the Court not to enforce Rule 4(d)'s requirements governing waiver on the grounds that the filing of a waiver form is a "technical requirement," and that defendants, as reflected by their outreach offering to waive service, had "actual notice" of his lawsuit. Kogan Mem. at 9.  Such arguments cannot excuse defective service, which "is not cured or overcome 'on the mere assertion that a defendant had actual notice.'"  *Olivadoti v. 290 Riverside Co.*, No. 12 Civ. 386 (PAE), 2012 WL 1604906, at *4 (S.D.N.Y. May 8, 2012) (citations omitted).[6]  And the cases on which Kogan relies do not support that a plaintiff can comply with

---

[6] Kogan attempts to distinguish this case because the Court there had a second basis for dismissal—that the plaintiff had failed to raise a colorable federal claim and thus the complaint was dismissed for lack of subject matter jurisdiction.  *See* Kogan Reply at 5.  However, that there were two bases to dismiss the complaint in *Olivadoti* does not discount the Court's reasoning with respect to the failure of the plaintiff to properly serve the complaint.

Rule 4(d) without making—as is the case here—any effort to comply with the Rule's requirements.[7]  The assembled case law instead makes clear that the service requirements of Rule 4(d) are not mere technicalities.  Whether by means of effecting actual service or achieving a service waiver, a plaintiff is obliged to comply with the Rule, whose obligations are mandatory for all litigants.  *See, e.g.*, *Mused v. U.S. Dep't of Agric. Food and Nutrition Serv.*, 169 F.R.D. 28, 35 (W.D.N.Y. 1996) (dismissing case where plaintiff failed to comply with Rule 4(m) because "[i]f courts consistently ignore or excuse flagrant violations of the Rules, the Rules will be rendered illusory and the whole federal judicial system will become riddled with uncertainty, inconsistency and delay.  Litigants and their attorneys must diligently attempt to follow the Rules, regardless of whether it is convenient or desirable"); *cf. Rodriguez v. It's Just Lunch Int'l*,

---

[7] Kogan relies on three inapposite cases to argue that he need not comply with the technicalities of Rule 4(d).  First, he cites *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, No. 02 Civ. 6438 (SAS), 2002 WL 31509881, at *3–4 (S.D.N.Y. Nov. 6, 2002), in which the court, considering a disputed waiver of formal service of process, refused to remand the case because the plaintiff had served the defendant via email and first-class mail, and the defendant had accepted such service without protest at the time, *see id.*  Second, Kogan cites *Parikh v. Township of Edison*, Civ. No. 08-3300 (JAG), 2009 WL 5206011, at *8 (D.N.J. Dec. 29, 2009), in which the court denied a motion to dismiss where the plaintiff had served the defendant's "authorized agent"—although the plaintiff had failed to prove that the agent was authorized to accept service on the defendant's behalf—and later defendant's counsel, who was already in possession of the complaint, told plaintiff's counsel that he would accept service on the defendant's behalf, *see id.* at *3–4, 8.  Third, Kogan argues that actual notice is all that is needed by relying on *Leger v. Dessureault*, 733 F. Supp. 786, 789–91 (D. Vt. 1990).  The court there denied a motion to dismiss based on ineffective service because the defendant admitted actual notice of the suit after the plaintiff had attempted to serve him through first-class mail, but the defendant failed to return the waiver of service form.  *See id.* at 787, 790.

This case is materially different from all three cases that Kogan cites.  Here, unlike in those cases, Kogan has failed to demonstrate an attempt to serve defendants through any means.  In addition, *Leger* is inapplicable because it relied on *Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir. 1984), a case that applied Federal Rule of Civil Procedure 4(c)(2)(C)(ii), which allowed for complete and effective service by mail when a defendant failed to return an acknowledgement form and was later superseded by 1993 amendments to Rule 4 requiring the return and filing of such a form.  *See Tuitt v. Long Island R.R. Co.*, No. 10 Civ. 8582 (ALC) (GWG), 2012 WL 3241658, at *3–4 (S.D.N.Y. Aug. 10, 2012).

No. 07 Civ. 9227 (SHS) (KNF), 2010 WL 1407980, at *2 (S.D.N.Y. Apr. 6, 2010) (declining to award plaintiffs costs under Rule 4(d)(2) because plaintiffs failed to comply with Rule 4(d)(1)—with which they "*must* comply" when seeking a waiver of service—by never requesting a waiver of service (emphasis added)).

The Court therefore rejects Kogan's argument that, by virtue of defendants' expression of willingness to waive service, he obtained a waiver of service.

### B.    Good Cause to Excuse Kogan's Failure to Meet the Service Deadline

Kogan next argues that there was "good cause" for his failure to meet the June 2019 service deadline, and that, even though the 90-day window to effect service closed months ago, the Court should excuse his lapse and give him an additional 30 days to effect service.  *See* Kogan Mem. at 12–15.  This argument is quickly put aside.

Good cause to excuse a failure to effect service exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control."  *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (quoting *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999)).  A "party seeking a good cause extension bears a heavy burden of proof," which is not satisfied by "a showing that the plaintiff encountered some unanticipated difficulty." *Spinale v. United States,* No. 03 Civ. 1704 (KMW) (JCF), 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005).  An attorney's inadvertence, neglect, or mistake is not good cause. *Ping Chen*, 966 F. Supp. 2d at 306.

Here, Kogan has not come forward with any coherent, substantiated excuse for his failure to effect timely service.  And any excuse would have to take into account the extent of Kogan's lapse.  Far from having effected service "slightly late," Kogan did not even request leave to file a waiver of service or an extension of time to serve defendants until six months after the Rule 4(m)

deadline and nine months after the filing of his original Complaint.  *See Am. Commercial Barge Line Co. v. Tug Joan Salton*, No. 99 Civ. 846 (RCC), 2001 WL 262724, at *4 (S.D.N.Y. Mar. 16, 2001) (denying request for leave to effect service made nine months after filing of original complaint, *id.* at *2, 5).  Kogan did not file this request until after this Court had adjourned the pretrial conference because of a lack of service and had issued an order to show cause as to why the case should not be dismissed, and after defendants had served him with their motion for Rule 11 sanctions.  Strikingly, too, Kogan's failure occurred in the face of defendants' repeated reminders to him of the looming service deadline.  And it occurred in spite of Kogan's acknowledgment in writing, prior to the filing of his Complaint, that this filing was on the brink of the lapse of the limitations period for defamations actions, making timely service paramount.  Kogan, in short, "completely disregarded Rule 4(m)."  *Id.* at *4; *see also Gibbs v. Imagimed, LLC*, No. 11 Civ. 2949 (ER), 2013 WL 2372265, at *3 (S.D.N.Y. May 30, 2013) (dismissing for lack of timely service where plaintiff's counsel "took no steps to request an extension of time to serve" the defendant, even though plaintiff's counsel had been notified several times about the lack of service); *Jonas v. Citibank, N.A.*, 414 F. Supp. 2d 411, 416 (S.D.N.Y. 2006) (noting that courts dismiss cases where plaintiffs have failed to seek extensions of time for service); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 222 F.R.D. 79, 81 (S.D.N.Y. 2004) (denying motion for extension of time for service where plaintiff was twice notified of the lack of service and failed to correct it); *Allianz Ins. Co. v. Otero*, No. 01 Civ. 2598 (LMM) (HBP), 2003 WL 262335, at *4 (S.D.N.Y. Jan. 30, 2003) (dismissing where plaintiff never requested an extension of time within the original window for service).

Kogan's purported excuses for egregiously booting this foundational deadline are specious.

Kogan first implies that he made efforts to secure defendants' waiver of process. *See* Kogan Mem. at 12–13. The documentary record refutes that claim. It reflects offers by defendants to waive, followed by inattention on Kogan's part. *See, e.g.*, Aycock Decl. ¶¶ 10–12. This case is thus a far cry from the primary case on which Kogan relies, *Baldasaro v. Vermont Department of Corrections*, No. 16 Civ. 252 (WKS) (JMC), 2017 WL 3037477 (D. Vt. June 14, 2017), *report and recommendation adopted*, 2017 WL 3025855 (D. Vt. July 17, 2017). There, the plaintiff "attempted at least twice to secure Defendants' waiver of service" by mailing the complaint, summons, and a request for a waiver of service to both defendants and defense counsel. *Id.* at *4; *see also Klinker v. Furdiga*, No. 12 Civ. 254 (CR), 2013 WL 1705106, at *5 (D. Vt. Apr. 19, 2013) (cited at Kogan Mem. at 13) (plaintiff "repeatedly" attempted to negotiate waiver of service with defendant). Kogan does not point to any instance in which he affirmatively pursued a waiver of service, let alone in which defendants were unresponsive to such a bid.

Kogan next contends that he was unrepresented from June 12 to September 15, 2019. Kogan Reply Decl. ¶ 12; *see also* Kogan Mem. at 13–14. But this too does not excuse his failure to effect service. Kogan's initial counsel, Pollock, represented him from before the filing of the Complaint and through almost the entire service period. *See* Kogan Reply Decl. ¶ 12; *see also* Aycock Decl. ¶¶ 6–7, 10–12. In addition, Pollock held himself out as Kogan's attorney, speaking with defendants' counsel on several occasions without stating that he was apparently no longer retained by Kogan. *See* Aycock Decl. ¶¶ 12–14; *see also* Kogan Reply Decl. ¶ 16. The purported three-month gap in Kogan's representation does not excuse his failure to complete service or file a waiver of service before the Rule 4(m) deadline, or his subsequent wide miss of the deadline. And the record calls into substantial question Kogan's claim that a gap in

14

representation explains his ensuing months-long failure to act.  Kogan's new counsel, Jennifer

Beckage, attests that she did not alert to the service issue until defendants' counsel raised the

issue on October 16, 2019, *see* Beckage Decl. ¶ 15, despite the Court's earlier adjournment, on

the public docket, of the initial conference because of lack of service, *see* Dkt. 11.  And even

after purportedly becoming aware of the issue, Beckage failed to address, in any way, the need

for service.  In fact, Beckage was not spurred to action until the Court issued an order to show

cause, five months after the Rule 4(m) deadline had passed, requiring Beckage to file a response

or risk dismissal of the case.  *See* OTSC; *see also Martinez v. SEIU Local 32BJ*, No. 18 Civ.

3961 (JMF), 2019 WL 1259381, at *2 (S.D.N.Y. Mar. 19, 2019) (noting that plaintiff only

sought extension to serve complaint in response to order to show cause and dismissing

complaint).  In any event, as the assembled case law reflects, a party's mere *pro se* status, or

search for counsel, does not alone establish good cause for a failure to effect timely service.  *See,*

*e.g.*, *Jonas*, 414 F. Supp. 2d at 417 (dismissing *pro se* plaintiff's complaint for lack of service

and noting that the Supreme Court has "never suggested that procedural rules in ordinary civil

litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"

(quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *cf. Carl v. City of Yonkers*, No. 04

Civ. 7031 (SCR), 2008 WL 5272722, at *7 (S.D.N.Y. Dec. 2008), *aff'd*, 348 F. App'x 599

(2d Cir. 2009) (crediting plaintiff's attempts, while unrepresented, to effect timely service, but

ultimately dismissing complaint).

Kogan next argues that defendants would not be prejudiced were the Court to excuse his

failure to effect service.  *See* Kogan Mem. at 14–15.  A lack of prejudice, however, is not itself

an excuse for failure to serve on time.  "[T]hose courts which considered prejudice to defendants

did so only after finding that plaintiff had been diligent in attempting to make service," as "any

inquiry into prejudice can be made only after a determination that plaintiffs' failure to serve process was not a result of negligence." *Koppelman v. Schaller*, No. 87 Civ. 7912 (MBM), 1988 WL 98781, at *3 (S.D.N.Y. Sept. 14, 1988); *see also DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010) ("In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay."). Here, Kogan has not made any such showing. Having failed to demonstrate any attempt to discharge his service duties, he has no charter to ask the Court to inquire into the extent of prejudice to his adversaries. *See ATSI Commc'ns, Inc.*, 222 F.R.D. at 81 ("[I]f the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if that means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits." (quoting *Mused*, 169 F.R.D. at 35)); *see also Am. Commercial Barge Line Co.*, 2001 WL 262724, at * 3 ("[T]he court will consider whether plaintiff was conscientious about complying with the Rules, including, but not limited to, whether plaintiff moved under FRCP 6(b) for an extension of time in which to serve the defendant.").

In any event, Kogan's supposition that there would be a total lack of prejudice to the defendants is flatly wrong. Simply put, defendants have a right to enforcement of a statutory limitations period. They have a right to insist that—absent a valid basis for tolling—the defamation and associated tort claims here be timely filed and pursued. If the Complaint here is dismissed based on Kogan's failure to timely serve it, any attempt by Kogan to file anew— assuming that Kogan's pre-Complaint assessment of when the limitations period expired is correct—would be untimely, by many months. Although plaintiffs may suffer prejudice when a dismissal without prejudice time-bars an action, in these circumstances, excusing Kogan's

service lapse would also visit prejudice on defendants, insofar as it would force them to defend against claims that, as a matter of law, are otherwise no longer viable.  *See Zapata v. City of New York*, 502 F.3d 192, 198–99 (2d Cir. 2007) (affirming Rule 4(m) dismissal where plaintiff made no effort to serve and failed to ask for an extension within a reasonable period of time, acknowledging that "[i]t is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action").

The Court therefore denies Kogan's request that his failure to timely serve defendants be excused for good cause.

### C.    Discretionary Extension of Kogan's Service Deadline

Kogan's final argument is that the Court should grant a discretionary exception to Rule 4's requirements.  Kogan Mem. at 15–21.

Courts have discretion to grant equitable relief through extensions for service in the absence of good cause.  *See Zapata*, 502 F.3d at 196–97.  And while courts "*may* grant an extension in the absence of good cause," they are "not required to do so."  *Zapata*, 502 F.3d at 197 (emphasis in original).  When determining whether to grant such an extension, relevant considerations include: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service."  *DeLuca*, 695 F. Supp. 2d at 66 (collecting cases); *see also Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015).  But "[t]hese factors are not dispositive."  *Barbosa v. City of New York*, No. 16 Civ. 7340 (LTS), 2018 WL 4625620, at *3 (S.D.N.Y. Sept. 26, 2018).  Courts may also take other equitable considerations into account.  *See Bender v. Gen. Servs. Admin.*, 539 F. Supp. 2d 702, 705 (S.D.N.Y. 2008).  And, importantly, "even if the balance of hardships favors the plaintiff a

district court may still decline to excuse a failure to timely serve the summons and complaint

where the plaintiff fails to advance some colorable excuse for neglect." *Vaher v. Town of

Orangetown*, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013) (citing *Zapata*, 502 F.3d at 198 & n.7);

*see also Barbosa*, 2018 WL 4625620, at *3 (declining to grant extension where "balance of

hardships [did] not clearly favor the Plaintiff"). Here, although there are equitable

considerations that point in each direction, the balance of hardships does not favor Kogan, let

alone clearly so.

The equitable factor that potentially could most favor Kogan is that, as noted, enforcing

the service deadline may result in the expiration of the statute of limitations as to some or all of

his claims. As numerous courts have held, however, that consequence "does not always warrant

a discretionary exception." *Harmon v. Bogart*, 788 F. App'x 808, 810 (2d Cir. 2019); *see also,

e.g.*, *Brunson-Bedi v. New York*, No. 15 Civ. 9790 (NSR), 2018 WL 2084171, at *9

(S.D.N.Y. May 1, 2018) ("The statute of limitations on all of Plaintiff's claims have run . . . .

This factor weights in Plaintiff's favor, but is not dispositive."); *E. Refractories Co.*, 187 F.R.D.

at 506 ("The fact that plaintiff's claims may be time-barred does not require us to exercise our

discretion in favor of plaintiff."); *Knorr v. Coughlin*, 159 F.R.D. 5, 7 (N.D.N.Y. 1994) ("[T]he

fact that dismissal will impact the statute of limitations does not compel the court to excuse the

violation.").

Instead, courts weighing this consideration have focused on whether the plaintiff had

been aware of the deadline and the extent of the plaintiff's efforts to meet it. *See, e.g.*, *Zapata*,

502 F.3d at 199 (affirming denial of motion for service extension for time-barred action because

plaintiff "made no effort to effect service within the service period" and "neglected to ask for an

extension within a reasonable period of time"); *Barbosa*, 2018 WL 4625620, at *3–4 (holding

discretionary extension not warranted even though plaintiff was time-barred from refiling his complaint where plaintiff made no effort to correct service defects despite receiving notice of such defects); *Astarita*, 1997 WL 317028, at *4–5 (dismissing amended complaint as time-barred because "no effort ha[d] *ever* been made to effect formal service" (emphasis in original)); *Bakal v. Ambassador Constr.*, No. 94 Civ. 584 (JSM), 1995 WL 447784, at *3 (S.D.N.Y. July 28, 1995) ("[W]here, as here, plaintiff can provide no reasonable excuse for the failure to make timely service, the fact that a reinstitution of the action will be barred by the statute of limitations is not by itself a reason to deny the motion to dismiss [under Rule 4(m)]."); *Knorr*, 159 F.R.D. at 7 ("Here, there has not been merely 'one misstep,' but many, and to excuse this failure would be to extract the tiger's teeth."); *E. Refractories Co.*, 187 F.R.D. at 506 ("Generally, when courts consider granting an extension of time notwithstanding a lack of good cause, they are considering motions made by plaintiffs prior to the expiration of the [90]-day period.").

In the circumstances here, limited weight is properly assigned to this factor, for three reasons. First, Kogan did not make any effort to timely serve the defendants or to ask for a waiver. His is not a case, for example, in which the plaintiff tried to achieve service, but due to clerical or mailing errors or similar technical lapses, proved unable to do so effectively. Kogan instead did nothing with respect to service, either before the service deadline or in the months thereafter. Thus, this case sharply contrasts with all those on which Kogan relies, in which the plaintiff was able to point to some such effort to satisfy Rule 4, either within or slightly outside the service time window. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 162 F. Supp. 3d 247, 249–50 (S.D.N.Y. 2016) ("*In re MTBE*") (plaintiff mailed complaint to defendant, and defendant remained silent as to lack of service for over a year); *AIG Managed*

*Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 106, 110 & n.5 (S.D.N.Y. 2000) (plaintiff's counsel mailed complaint and request for waiver of service to defendant's counsel, and defendant "engaged in potentially confusing conduct" by participating in related cases); *Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95 Civ. 9341 (RWS), 1997 WL 221200, at *3 (S.D.N.Y. Apr. 1, 1997) (plaintiff mailed waiver of summons request to defendants within a week of filing the complaint and served defendants two months after deadline); *Rupert v. Metro-N. Commuter R.R. Co.*, No 95 Civ. 4283 (DC), 1996 WL 447745, at *1–2 (S.D.N.Y. Aug. 7, 1996) (plaintiff's counsel served wrong complaint on defendants due to "inadvertent clerical error," and error was corrected at first conference, but actual complaint was not served before Rule 4(m) deadline).

Second, Kogan had actual knowledge of the looming statute of limitations deadline. His counsel even cited it in communications with defendants. *See* March 2019 Emails at 2–3. Kogan thus had actual, not merely constructive, notice that failure to meet filing and service deadlines could prevent Kogan's claims from being litigated on the merits. Yet he took no action toward service.

Third, defendants did nothing to induce the expiration to the limitations period. They do not bear fault here. Far from laying low or engaging in gamesmanship, defendants, soon after removal, demonstrably offered to waive service. And, as the service deadline approached, defendants even reminded Kogan of this looming deadline. *See In re MTBE*, 162 F. Supp. 3d at 249 (extending deadline where plaintiff mailed the complaint to defendants, and defendants' motion to dismiss for insufficient service was "obvious attempt by [defendant] to gain the benefit of the statute of limitations if the Complaint were to be dismissed"); *see also DeLuca*,

695 F. Supp. 2d at 66 (one factor courts consider in deciding whether to grant an extension is whether defendants "attempted to conceal the defect in service").

In these circumstances, Kogan's counsel's decision not to pursue service can only be taken as willful. Relatedly, the Court notes that upon filing the Complaint, Kogan's counsel and Kogan appear to have devoted considerable time to promoting publicly Kogan's defamation claims. *See. e.g.*, *N.Y. Times* Article. These media efforts were presumably made in an effort to rehabilitate Kogan's reputation, which had had been damaged as a result of the highly publicized Cambridge Analytica data-selling scandal in which he had been implicated. They may have also been intended to induce a settlement from Facebook; when defendants' counsel raised a possible waiver of service, Kogan's counsel responded by inquiring about settlement. *See* Aycock Decl. ¶ 12. Regardless of Kogan's subjective motivations, his and his counsel's extrajudicial activities with respect to the Complaint after its filing underscore that Kogan and his counsel had the time and opportunity to attend in the ensuing 90 days to effect service (or a waiver). They chose instead to apply their efforts elsewhere.

The other discretionary factor that could potentially favor Kogan is that defendants—on account of press reports—had notice of the lawsuit. Even without service, defendants thus had the opportunity to prepare to defend it. But viewed in context, that factor, too, merits only limited weight. Defendants responded properly to such notice, by taking the initiative to inquire about a service waiver, so as to move the litigation forward. Kogan, however, chose not to pursue service or a waiver. Indeed, he did not take any action with respect to this litigation until more than five months later, after the Court had issued its order to show cause and defendants had moved for Rule 11 sanctions. A defendant's notice of a lawsuit does not excuse a plaintiff's failure to serve. *See Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002). And courts,

21

balancing equitable factors, have declined to extend service deadlines where the plaintiff made no effort to achieve service, the resulting delay was lengthy, or plaintiffs failed to present a justifiable excuse for failing to effect service.[8] *See, e.g.*, *Martinez*, 2019 WL 1259381, at *2 (dismissing where defendant had actual notice but plaintiff failed to serve defendant and "advanced no colorable excuse" for lack of service (citation omitted)); *Brunson-Bedi*, 2018 WL 2084171, at *9 (dismissing where defendants had actual notice but failed to attempt to serve or ask for extension within a reasonable time, and failed to explain the lack of service); *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 323–24 (S.D.N.Y. 2016) (dismissing where defendants had actual notice but delay was long and plaintiff failed to offer justifiable excuse for lack of service); *Vaher*, 916 F. Supp. 2d at 421–22 (same); *Gibbs*, 2013 WL 2372265, at *4 (dismissing where defendant had actual notice but plaintiff was notified of lack of service before deadline and did not attempt to effect service).

The other equitable factors cited above affirmatively disfavor relief. Far from concealing a service defect, defendants, as noted, repeatedly—and commendably—reminded Kogan that they had not been served. *See, e.g.*, *Barbosa*, 2018 WL 4625620, at *3 (defendants "repeatedly raised" plaintiff's defective service); *Vaher*, 916 F. Supp. 2d at 421 (same); *Gibbs*, 2013 WL 2372265, at *4 (defendant informed plaintiff of lack of service at least five times). And, importantly, defendants would suffer considerable prejudice from granting Kogan the more than

---

[8] Kogan complains that defendants cite cases where courts declined to grant a discretionary extension of time when the length of delay was longer than that here. *See* Kogan Reply at 8 & n.13. However, courts also have denied motions for discretionary extensions when plaintiffs have caused delays similar to, and shorter than, the delay here—where Kogan did not even ask for an extension of time to serve until almost nine months after the filing of his complaint and six months after the Rule 4(m) deadline had passed. *See e.g.*, *Martinez*, 2019 WL 1259381, at *2 (plaintiff asked for extension two months after Rule 4(m) deadline had passed); *Am. Commercial Barge Line Co.*, 2001 WL 262724, at *2, 4–5 (plaintiff requested leave to effect service nine months after filing of complaint).

six-month extension he seeks.  They would be obliged to spend time, money, and resources

litigating apparently time-barred claims.  This factor weighs against an extension.  *See, e.g.*,

*Zapata*, 502 F.3d at 197–99 (affirming dismissal where district court relied on prejudice to

defendant from defending a time-barred action); *Vaher*, 916 F. Supp. 2d at 421 (factor favored

defendants where service period and statute of limitations period had expired, even where

defendants had actual notice of claims); *cf. Cassano*, 186 F. Supp. 3d at 323 (acknowledging that

running of statute of limitations "cuts both ways").

  In finding that equitable factors do not favor—let alone clearly so—extending the service

deadline, the Court has carefully considered the entire record furnished on this motion, including

the contemporaneous communications among Kogan's and defendants' counsel.  This record, as

cited herein, for the reasons noted, supports dismissal and disfavors extending Kogan's time to

serve the Complaint, *nunc pro tunc.*  Separately, the Court notes that each side contends that

were the merits to be litigated, its position in the underlying lawsuit would have been strong.

*Compare* Kogan. Mem. at 6 (arguing that Kogan "did not run a 'fraud' or 'scam'" as defendants

have accused him of doing), *and* Kogan Reply at 6–7 (same), *with* Facebook Mem. at 4 & n.4

(highlighting Kogan's alleged role in Cambridge Analytica scandal and indicating intention to

move to dismiss on the merits).  In deciding against an extension, the Court, however, has not

resolved or placed weight on these competing characterizations.

  The Court, finally, notes that denying Kogan an extension to serve his Complaint would

not leave him without a remedy.  He has a potential remedy—against his then-counsel.  At the

times relevant here, Kogan did not proceed *pro se*.  His Complaint was filed by counsel (Pollock

Cohen), which represented Kogan in discussions (before and after the Complaint's filing, and

during the 90-day service period) with defense counsel, including with respect to a potential

waiver of service.  Kogan's counsel was responsible for assuring that Kogan met the deadlines set by the Federal Rules, including as to service.  If—as counsel for both sides have forecast—Kogan's failure to timely serve defendants deprived him of the ability to bring timely claims against the defendants, Kogan will be at liberty to explore (including with the guidance of his present counsel) whether an action for professional malpractice lies against the counsel on whose watch the service lapse occurred.  *See Carl*, 2008 WL 5272722, at *7.

The Court accordingly does not find that equitable considerations support extending the service deadline here.

**CONCLUSION**

For the reasons above, the Court dismisses Kogan's Complaint for failure to effect timely service.  The Clerk of Court is respectfully directed to terminate the motion pending at docket 18.

The Court will now, barring a resolution of this matter, consider defendants' pending motions (1) to dismiss Kogan's FAC, including on the ground that it is time-barred, and (2) for Rule 11 sanctions.  The Court encourages counsel, forthwith, to meet and confer to discuss whether there are terms under which these motions can be resolved without the need for judicial resolution.  Failing agreement, Kogan's opposition to these motions is due February 17, 2020, and defendants' reply is due February 24, 2020.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: February 3, 2020
       New York, New York

24